CHRISTY et al. v. HYGEIA PNEUMATIC BICYCLE SADDLE CO. et al.

(Circuit Court of Appeals, Fourth Circuit. May 2, 1899.)

No. 300.

1. PATENTS—INVENTION—BICYCLE SADDLES.
   There is no invention in constructing a bicycle saddle top with vertical, walled depressions, adapted to receive two cushions or pads, and hold them firmly in place.

2. SAME—EVIDENCE OF PATENTABILITY—LARGE SALES.
   Large sales and increasing popularity cannot be accepted as certain proofs of novelty and invention, especially when the article, as made and sold by complainant, differs in many respects from the article shown in the specifications, and covered by the claims.

3. SAME—BICYCLE SADDLES.
   The Christy patent, No. 532,444, for a bicycle saddle having a solid top, with vertical, walled depressions, adapted to receive and hold in place two cushions or pads, is void for want of invention.

Appeal from the Circuit Court of the United States for the District of Maryland.

Julian C. Dowell and Wm. A. Redding, for appellants.

Arthur Steuart and Horace Pettit (Stinson & Williams, on the brief), for appellees.

Before GOFF, Circuit Judge, and BRAWLEY and WADDILL, District Judges.

GOFF, Circuit Judge. This is an appeal from a decree passed by the circuit court of the United States for the district of Maryland dismissing the bill of complaint filed in said court by the appellant, the object of which was to restrain the appellees from manufacturing, selling, or using certain bicycle saddles, which it was alleged in said bill constituted an infringement of the letters patent of the United States, No. 532,444, issued January 15, 1895, to Henry A. Christy, for improvements in a bicycle saddle, which patent, it was claimed, was owned by the complainant company. The complainant below was a corporation organized under the laws of the state of Illinois; and the defendant, a corporation organized under the laws of the state of

Maryland. The defenses relied on were the nonpatentability of the invention and noninfringement. The court below held that, in view of the prior state of the art, the claims set up in the patent were invalid, and entered a decree dismissing the bill, from which the appeal we now dispose of was taken. 87 Fed. 902.

We have given due consideration to the appellants' assignments of error, have carefully examined the claims made in support of the patent in suit, and also the insistence that defendants below had infringed the same; and we find ourselves impelled to the conclusion that the validity of said patent depended upon whether it required invention to manufacture the bicycle saddle described therein,—the prior state of the art considered,—and, as we also find that no invention was necessary in order to construct the same, that the patent was invalid, and the bill was properly dismissed. The testimony, all prior patents bearing on the one in controversy, as also the state of the art when said patent was issued, were so fully considered in the opinion of Judge Morris, by which he so clearly demonstrated the invalidity of said patent, that we not only deem it proper, but find it best, to quote the same here in full, approvingly. It is as follows:

"Bill of complaint for the infringement of letters patent No. 532,444, issued to Henry A. Christy January 15, 1895, for bicycle saddle. The defenses are want of patentable novelty and noninfringement.

"The claims of the patent are as follows: '(1) A bicycle saddle having a solid top provided upon its upper surface, with recessed or sunken portions at each side of the seat portion, constructed to receive and hold removable pads,—said recesses being formed with abrupt marginal walls to prevent the pads from slipping,—substantially as described. (2) A bicycle saddle having a solid top provided upon its upper surface, with recessed or sunken portions at each side of the seat portion, constructed to receive and hold pads,—said recesses being formed with abrupt marginal walls to prevent the pads from slipping,—in combination with pads adapted to fit said recesses so as to be removably retained therein, substantially as described. (3) A bicycle saddle having a solid top provided upon its upper surface, with recessed or sunken portions at each side of the seat portion, constructed to receive and hold removable pads, and having a horn portion shortened or truncated so that it will not project between the legs of the rider, and also cut away or recessed upon its upper surface centrally of said horn portion, substantially as described.'

"The complainant contends that claims 1 and 2 are infringed. Claim 3 is not in controversy, for the reason that in the defendant's saddle it is conceded that the horn is not truncated or shortened up so as not to project between the legs of the rider, as called for by claim 3. Claim 1 is for the saddle plate, made with sunken recesses on each side of the center line of the seat; the recesses being formed with abrupt marginal walls to receive and hold removable pads, and prevent the pads from slipping. Claim 2 is for the same device in combination with pads adapted to fit the recesses so as to be removably retained therein. As the defendant's saddle has the removable pads fitted into the recesses, if it infringes either it infringes both claims; and, so far as this case is concerned, claims 1 and 2 may be considered as identical.

"The Christy saddle, as manufactured by the complainant and known to the trade, is quite different in some of its features from the saddle described in the specification and the drawings of the patent, so that the question to be decided in this suit turns, not upon the similarity of the defendant's saddle to that made by the complainant, but upon the validity of the claims of the patent in suit, and the infringement of those claims as explained by the specification. The prior patents put in evidence show that there was nothing new in any of the objects which Christy has in mind to accomplish. Christy states that his object was to lessen the discomfort and injury which bicycle riders suffer from the pressure of the saddle upon the perineum, and from

the rubbing of the legs against the horn. In Hicks' patent for a cushion seat designed particularly for bicycles (No. 487,367; October 11, 1892), he states that his object is to obtain a cushion seat that will adjust itself to the shape of the rider, and at the same time prevent injurious pressure against the perineum. This he tried to accomplish by an inflatable cushion, with a covering of any suitable material, secured in any desired manner to a base of some inelastic material, preferably of wood; the cushion to be formed with a fissure extending from the front rearward to any desired extent. He says: 'This fissure prevents upward pressure on the perineum when a person sits thereupon. This fissure may be formed by securing a portion of the top of the cushion intermediate the sides down firmly upon the lower portion thereof, allowing the cushion to be inflated at each side thereof. The fissure may extend only part way towards the rear of the cushion, * * * or it may pass to the rearward limit of the cushion, dividing it into two separate air chambers. * * * Such a form relieves the perineum. * * *' We thus have in Hicks' device an inelastic base upon which are secured two cushions to support the ischial tuberosities of the rider, and separated along the center line of the seat by a vacant space which relieves the perineum from all pressure. This is precisely what is accomplished by the two separate cushions or pads, with the space between them, shown in the Christy saddle, as manufactured by the complainant. In the English patent to Henson (No. 19,840) of 1893, the same object is declared to be the purpose of the bicycle saddle there described, in which there is cut out from the framework of the saddle the portion between the points where the ischial tuberosities are to rest, or a depression is formed in the frame there, so as to leave a vacant space, with nothing to press against the perineum. It is apparent, therefore, that the claim of Christy was rightly restricted to the mechanical device by which a saddle having two separated cushions or pads, with a space between them, might be constructed; his invention, as claimed by him in his patent, being solely for the sunken depressions in the solid saddle top, so formed as to receive the cushions or pads, and prevent the pads slipping. It is conceded that, if cushions or pads similar to those shown in the defendant's saddle are fastened to the top of a saddle without depressions, there is no infringement. The validity of the patent then depends upon whether, in view of the state of the art, it required invention to construct a saddle top with vertical, walled depressions, adapted to receive the two cushions and hold them in place. It is certainly a case in which all that is new in the mode of construction is not very distinguishable from mere mechanical improvement, and, if it can be shown that the idea of the mode of construction was not new, then I think nothing remains but mechanical skill.

"It being conceded that all that the complainant can make claim to is the depressions to receive the pads, it is important to see if that idea, in connection with the seat of a metal-top saddle, was new. It is a matter of observation that a depression, more or less deep, made in a seat in order to receive a cushion, is common and old; and in the English patent in evidence (No. 12,854 of 1889), to Henry Edward Newton, he describes an equestrian saddle to be made of thin sheet steel or iron, in which 'two cup-like depressions are stamped, one depression being on each side of the central axis of the blank. These depressions are subsequently filled up with India rubber, gutta percha, padding, or any other suitable elastic substance, so as to render the seat comfortable and elastic to the rider.' And his claim 2 is for 'the cup-like depressions, F, F, as described, as illustrated in the drawing, for the purposes herein set forth.' This, it seems to me, is the substance of the complainant's specification and claim, viz. in a metal-top saddle, a depression on each side of the axial line, made to receive padding, intended to make the seat elastic to the pressure of the tuberosities of the ischii. Here we have the same problem of a rigid metal seat to be made elastic at the same two points of contact with the rider's body, and the same device to accomplish it, viz. depressed spots in the metal, to be filled with pads. It is urged that there are in the complainant's device the additional elements that the depressions are made with abrupt walls to prevent the pads from slipping, and that the pads are removable, both of which features are asserted to be important and useful improvements. But with cup-like depressions to hold the pads, already

shown by Newton's patent, it does not appear that it required invention to make the depressions sufficiently abrupt to prevent the filling from slipping. In his specification, Christy states: 'In my improved saddle I have only a truncated horn;   *   *   *   and I also prefer that this truncated horn portion, instead of being convex upon its upper surface, as in the old construction, should be cut away, or concave, centrally thereof, thereby giving room for the portions of the person which are so easily injured. I also preferably make the rear of the saddle wider than ordinarily constructed, so as to sustain the fleshy portions of the buttocks as well as the pelvis, and provide upon each side of the seat portion a sunken portion or recess constructed to receive and hold pads or cushions which may be removably fitted therein for the comfort and ease of the rider.' In the drawings the pads are shown lying in the depressions, and not extending above the plane of the metal top of the saddle. In the Christy saddle, as manufactured, the horn is not truncated, it is not cut away or made concave on its upper surface, and the saddle is not made wide, and does not support the fleshy portion of the buttocks at all. As manufactured, the Christy saddle presents nothing to the body of the rider but the two small pads on which the two ischii rest, sustaining the whole of the rider's weight. Instead of the concavity, the truncated horn being cut out to relieve the pressure on the perineum, there is substituted on the saddle, as manufactured, an open space the whole length of the saddle, from front to rear, between the two cushions, which space, from the cushions being considerably separated, and being built up quite high above the plane of the metal saddle, is both wide and deep. Merit is claimed for the saddle because the cushions are removable, but, as manufactured, they are held in the recesses by catches of twisted wire. Any cushion which is affixed to a solid base may be removed, if the fastenings are released. Great advantage is also claimed because the abrupt walls of the sunken recesses prevent the cushions from slipping. But if it was not new, as is shown by the English patent to Newton, to make the recesses in a metal saddle to receive cushions, it can hardly be said to require invention, when the cushions as used are liable to slip, to make the recesses sufficiently abrupt to prevent slipping. The strongest and most persuasive argument which the complainant urges in favor of the patentability of the Christy saddle is based upon the testimony showing the rapidly increasing sales and its decided popularity since it has become known upon the market. But the saddle manufactured differs so widely from the saddle shown in the specification and drawings that it is not easy to determine just what features make it acceptable to the trade and to those who use it. It would appear that some of the features of the saddle as manufactured, which are not shown in the saddle as patented, possess more novelty and utility than those described in the patent. It may be well that the advantages of the manufactured saddle result from the fact that the saddle plate is reduced in size until it is nothing more than a support for the two pads, and has no bearing at all for the fleshy portion of the buttocks, so that the rider's weight rests exclusively upon the two ischii of the pelvis, and also from the fact that the interval between the cushions or pads leaves an open space from front to back similar to that shown in the Hicks patent, through which there can be a current of air, and because of which there can be no pressure upon the perineum. It seems quite probable that it may be these unpatented features, not shown in the specifications or drawings, which have given the Christy saddle the acceptance which it has obtained, rather than any advantage of construction arising from the fact that the pads are set in depressions and are detachable. It may also be that, with the enormously increased use of bicycles, experience may have taught particular riders that in the long run it is less injurious to use one kind of a saddle than another, although not so agreeable at first. The fact of comparative utility, when the acceptance of the improved device may just as well be attributed to features not claimed in the patent, is an unsafe guide in determining the existence of patentable invention.

"Upon the whole case, considering the prior state of the art, I have been forced to the conclusion that it did not require invention to form the recesses on the surface of a solid-top saddle with abrupt marginal walls to receive the pads and keep them from slipping."

Appellant claims that the fact that the saddle manufactured by it so soon went into extensive use, and largely superseded the saddles made prior to the date of the patent in suit, is evidence, not only of novelty and value, but also of usefulness and invention. It must be conceded that the sales were phenomenally large, and that the evidence shows the Christy saddle was received with great favor by those who used the bicycle; and also it may be admitted that it not only added to their comfort, but contributed to their safety. But still we do not think that it follows that, therefore, invention was required to design and construct it. On this question the supreme court of the United States, in McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76, said:

"That the extent to which a patented device has gone into use is an unsafe criterion, even of its actual utility, is evident from the fact that the general introduction of manufactured articles is as often effected by extensive and judicious advertising, activity in putting the goods upon the market, and large commissions to dealers, as by the intrinsic merit of the articles themselves. The popularity of a proprietary medicine, for instance, would be an unsafe criterion of its real value, since it is a notorious fact that the extent to which such preparations are sold is very largely dependent upon the liberality with which they are advertised, and the attractive manner in which they are put up, and exposed to the eye of the purchaser. If the generality of sales were made the test of patentability, it would result that a person, by securing a patent upon some trifling variation from previously known methods, might, by energy in pushing sales, or by superiority in finishing or decorating his goods, drive competitors out of the market, and secure a practical monopoly, without in fact having made the slightest contribution of value to the useful arts. The very case under consideration is not barren of testimony that the great success of the McClain pads and clasping hooks, a large demand for which seems to have arisen and increased year by year, is due partly, at least, to the fact that he was the only one who made the manufacture of sweat pads a specialty; that he made them of a superior quality, advertised them in the most extensive and attractive manner, and adopted means of pushing them upon the market, and thereby largely increased the extent of their sales. Indeed, it is impossible from this testimony to say how far the large sales of these pads is due to their superiority to others, or to the energy with which they were forced upon the market. While this court has held in a number of cases—even so late as Magowan v. Packing Co., 141 U. S. 332, 12 Sup. Ct. 71, decided at the present term—that in a doubtful case the fact that a patented article had gone into general use is evidence of its utility, it is not conclusive even of that; much less, of its patentable novelty."

The United States circuit court of appeals for the Ninth circuit, in the case of Klein v. City of Seattle, 44 U. S. App. 741, 23 C. C. A. 114, and 77 Fed. 200, used the following language, which we think applicable to the case now under consideration:

"A patent must combine utility, novelty, and invention. It may in fact embrace utility and novelty in a high degree, and still be only the result of mechanical skill, as distinguished from invention. A person, to be entitled to a patent, must have invented or discovered some new and useful art, machine, manufacture, or composition of matter, or some new and useful improvement thereof. In the language of the supreme court: 'It is not enough that a thing shall be new, in the sense that, in the shape or form in which it is produced, it shall not have been before known, and that it shall be useful, but it must, under the constitution and statute, amount to an invention or discovery.' Hill v. Wooster, 132 U. S. 693, 701, 10 Sup. Ct. 228, 231, and authorities there cited. A mere difference or change in the mechanical construction, in the size or form of the thing used, in order to obviate known defects

existing in the previous devices, although such changes are highly advantageous, and far better and more efficacious and convenient, does not make the improved device patentable. In order to be patentable, it must embody some new idea or principle, not before known. It must, as before stated, be a discovery, as distinguished from mere mechanical skill or knowledge. Atlantic Works v. Brady, 107 U. S. 192, 200, 2 Sup. Ct. 225; Hollister v. Manufacturing Co., 113 U. S. 59, 5 Sup. Ct. 717; Thompson v. Boisselier, 114 U. S. 2, 11, 5 Sup. Ct. 1042; Trimmer Co. v. Stevens, 137 U. S. 423, 433, 11 Sup. Ct. 150; Andrews v. Thum, 33 U. S. App. 39, 15 C. C. A. 67, and 67 Fed. 911."

In Grant v. Walter, 148 U. S. 547, 13 Sup. Ct. 699, the supreme court, speaking by Mr. Justice Jackson, said:

"The most that can be said of this Grant patent is that it is a discovery of a new use for an old device, which does not involve patentability. * * * The advantages claimed for it, and which it no doubt possesses to a considerable degree, cannot be held to change this result; it being well settled that utility cannot control the language of the statute, which limits the benefit of the patent laws to things which are new as well as useful. The fact that the patented article has gone into general use is evidence of its utility, but not conclusive of that, and still less of its patentable novelty."

The supreme court of the United States, in the case of Aron v. Railway Co., 132 U. S. 84, 10 Sup. Ct. 24, said, as stated in the syllabus of said case:

"The same devices employed by him [the patentee] existed in earlier patents. All he did was to adapt them to the special purpose to which he contemplated their application, by making modifications which did not require invention, but only the exercise of ordinary mechanical skill; and his right to a patent must rest upon the novelty of the means he contrived to carry his idea into practical application."

We find no error in the decree appealed from, and it is affirmed.