### GRANT *v.* WALTER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 137. Argued March 28, 1893. — Decided April 10, 1893.

Letters patent, No. 267,192, issued November 7, 1882, to James M. Grant for "certain new and useful improvements in the art of reeling and winding silk and other thread" are void for want of patentable novelty, the alleged discovery being only that of a new use for the old device of a cross-reeled and laced skein; and while the fact that the patented article has gone into general use may be evidence of its utility, it cannot control the language of the statute, which limits the benefit of the patent laws to things which are new, as well as useful.

Features in a patented invention which are not covered by the claims are not protected by the letters patent.

IN EQUITY, to restrain the infringement of letters patent. Decree dismissing the bill, from which the plaintiff appealed. The case is stated in the opinion.

*Mr. William E. Simonds* for appellant.

*Mr. Henry Grasse* for appellee.

MR. JUSTICE JACKSON delivered the opinion of the court.

This is a suit in equity, in the usual form, for the alleged infringement of letters patent No. 267,192, issued to the

appellant, James M. Grant, on the 7th of November, 1882, for "certain new and useful improvements in the art of reeling and winding silk and other thread." The bill averred that the defendant had infringed the patent by making, using, vending and putting in practice, without complainant's license, improvements described and claimed in the patent. The prayer was for an injunction and for an account of profits and damages. The answer set up, amongst other defences not necessary to be noticed, a denial that Grant was the original inventor of the improvements described in the patent; that there was a want of novelty in the invention, and a prior use of the improvements claimed as patentable by various designated parties. Replication was duly filed, proof taken, and the court below, upon the hearing of the cause, found in favor of the defendant, and accordingly dismissed the bill. 38 Fed. Rep. 594. From this decree the present appeal is prosecuted, and the appellant assigns for error the lower court's "denial of patentability to the skein which Grant claims, while awarding it to the process which he does not claim." The court, however, did not decide that it was a valid process-patent, but suggested that if the improvement was a valid invention it was in the process and not in the product.

The material parts of the specification and the claims based thereon are as follows:

"My invention relates to a novel manner of winding silk or other thread upon the reels in a reeling-machine preparatory to its being dyed.

"The object of my invention is to provide an improved skein of silk whereby a greater quantity can be reeled upon the same machine in a given time, and to provide at the same time for making these skeins in a proper form to receive the dye in the best manner, and be ready after the dyeing to be placed upon the swift for unwinding upon bobbins in the customary manner.

"In the present method of manufacturing silk the thread, previous to dyeing, is wound into skeins upon a reeling-machine, in which some twenty or more small skeins containing generally one thousand yards, or less, are wound upon

a set of parallel bars set around an axis forming a long reel. Each skein is tied up by itself, and the reel is taken down or collapses to release the separate skeins. These small skeins are then dyed and then placed separately upon swifts to again unwind them. Larger skeins than above named have been found inconvenient, if not impracticable, on account of becoming tangled in the dyeing and difficult to unwind. By means of my improvement I am enabled to wind skeins of twenty-four thousand yards, or more, in each separate skein upon the reels, thus saving a great amount of labor in taking down the reels to remove the skeins, and the larger skeins wound in my improved manner can be placed at once upon the swifts and unwound without difficulty.

"My improvement consists in winding the silk or other thread upon the reel in the form of a wide band, in which the thread crosses from side to side as it is wound, somewhat in the manner now employed, but so arranged as not to form single skeins by passing one layer over the other. I prefer to have the thread cross in five-sixths of one revolution of the reel, although other proportions will answer. When the required quantity has been wound, I lace the skein or band, before it is removed from the reel, in one or more places, generally on opposite sides of the reel, so as to divide it into a number of parts and hold it in its flat or band-like condition. This lacing constitutes the chief point of my invention, and is what preserves the skein in its shape, and prevents its becoming entangled in the process of dyeing. After lacing, the skein is removed from the reel, and passes into the hands of the dyer. After winding in the manner above described the skein is so laid, one thread crossing the other, that its texture is more open even than the small skeins wound in the ordinary manner, and although much larger the dye easily penetrates to every part and insures a uniform color. The several threads cannot become matted together, as with the ordinary skein wound in the customary manner.

"By means of my invention a great saving is made in the expense of manufacture, the waste of silk is greatly reduced, and less skill is required in the winding after the dyeing,

thereby dispensing with the high-priced skilled operatives now employed upon this work.

" What I claim as my invention is:

" (1.) A skein of silk, or other thread, wound upon a reel diagonally from side to side, in the manner described, and laced back and forth across its width to preserve its form, substantially as set forth.

" (2.) The combination of the lacing B with a wide skein of silk or other thread in which the strands are diagonally crossed, substantially as described."

At the hearing of the case a disclaimer was filed in the Patent Office by the appellant " to so much of said claim as does or might make such claim apply to a skein which by reason of being coated with gum, or by reason of the manner of its lacing, or for any other reason, is not in condition for dyeing for ordinary manufacturing purposes." By stipulation of the parties it was provided " that this disclaimer may be made a part of the record in this suit, *nunc pro tunc*, as of the date of hearing thereof, as if the same had been filed on that date, to indicate the willingness of the complainant to limit his patent by said disclaimer, and as an aid in the construction of his patent, but without prejudice to the rights of this defendant on the question of delay in filing said disclaimer."

The Circuit Court held that the claims of the patent covered a product and not a process, and that the patent was void for want of patentable novelty, for the reason that the form of skein described in the specification and covered by the claims was well known and in use long prior to Grant's invention, which consisted in the method of dyeing and winding silk by the use of such well-known form of skein and not in the skein itself, and if valid to any extent, it was only upon the process. The court further held that the disclaimer could neither operate to give validity to the patent for the skein, nor change it into one for the process, and accordingly dismissed the bill.

As found by the Circuit Court, the evidence fully and clearly established the fact that skeins of silk diagonally reeled and laced across the width, so as to separate the skein into two or more sections, were in use and well known to the silk trade

long prior to Grant's improvement. The form of such skeins was substantially the same as that adopted by Grant. These anticipating skeins were in their construction similar to the construction of the skeins of the patent. They were produced in the same manner by the horizontal to-and-fro motion of a guide-bar for carrying the thread in front of the reel as the latter revolved, thus causing the diagonal or cross-reeling in the formation of the skein. They were laced into two or three sections across their width. The object and purpose of this diagonal reeling and lacing was to preserve the form of the skein and to prevent entanglement and snarling in the handling and future winding of the silk. These old skeins were made of raw silk, that is, silk coated with or carrying the silkworm's gum, and were smaller in size, and more tightly laced across their width than the Grant skeins in question. The diagonal reeling was somewhat wider in the skein of the patent than in the old skeins. The raw silk having a more delicate thread and much more liable in handling to become entangled, and therefore less easily wound than when the silk had been brought to a condition of thread, necessitated this cross-reeling and lacing to preserve the form of the skein and to facilitate the transportation and future handling of the silk in its further development in the process of manufacturing. Nor could the raw silk be dyed, because the filaments would separate, the gum which holds them together would be dissolved out, so that they would become snarled or entangled without this cross-reeling and lacing in the process of ungumming, and could not be subsequently wound without great difficulty and loss. It had to be first "boiled off," as it is called, or the gum removed, by being immersed for some period in soap and water or other liquid.

The process of manufacturing silk thread is thus described by a witness for the complainant:

"The silk in the shape in which it is formed by the silkworm exists in the shape of cocoons. These cocoons in the countries in which silk is grown are soaked in a suitable bath, and the filaments of silk that compose the cocoons are unwound from the cocoons and formed in skeins on reels or

swifts. In this shape it forms the raw silk of commerce and is imported into America in large quantities, mostly from Europe and Asia. The skeins of raw silk are treated by the manufacturer of silk thread (I do not mean by this term 'thread' sewing silks and braids only, but rather that known as tram and organzine that is used in making textile fabrics) usually as follows : The raw silk is ungummed; it is dried to a sufficient degree, and is then, in skein form, put on swifts, from which it is wound on, to spools or bobbins. The silk, according to the use to which it is to be put, is further doubled, in which operation it goes from spool to spool, is twisted, in which operation it goes from spool to spool, and when of sufficient size as to number of threads and of condition as to twisting it is reeled from the spool or bobbin into skein form. In this skein form it is dyed, and with the old form of skeins is then parted to separate the several small skeins that compose the larger skein, such as I now produce, and is then put on 'risers,' so called, and wound on to bobbins, in which shape the silk is used usually in the manufacture of textile fabrics. I will state that the 'risers,' as used in this old process of manufacture that I am describing, consisted of two small drums or pulleys, usually of about five or six inches in diameter, and that the skein was wound from these 'risers.'

"In this art the term 'winding' means the changing of the silk from the skein form to its form on a bobbin or spool, and by 'reeling' is meant the putting of the silk into the skein form."

The contention of the appellant is that the skein of the patent should be considered in connection with the specification and knowledge of the art possessed by the persons to whom the specification is addressed, and if the prior art requires limitations in order to leave validity in the patent, then it is right and proper for the court to read such limitations into the claims by construction, and on the basis of this proposition it is urged that Grant's skein differed from the earlier skeins shown by the testimony in at least two particulars: First, that the earlier skeins were gummed, and Grant's skeins are ungummed, which prevented the former from being dyed,

while the latter can be; and, secondly, that the earlier skeins were laced tightly for the purposes of transportation and handling, while Grant's skeins are laced loosely so that they are in a condition for dyeing. The Grant skein is shown to be an improvement over the earlier skeins for the purposes of dyeing, but neither the specification nor the claims of the patent limit it to that purpose. The disclaimer undertakes so to do, or rather to limit it to a condition in which the skein may be dyed.

The court below properly held that the disclaimer did not give any increased validity to the patent for the skein, or change it into one for a process. And the simple question presented is whether Grant's skein possesses features of patentable novelty over the earlier skeins shown by the testimony. The cross-reeling and lacing in the skein of the patent perform substantially the same function in substantially the same way as in the earlier skeins, but at a later and different stage or condition of the silk thread forming the skein. It is perfectly manifest that if a patent had existed on the earlier skein, the skein of the patent would be an infringement thereof, as being simply for a double or analogous use. Such analogous use, under the authorities, is not patentable. *Brown* v. *Piper*, 91 U. S. 37; *Pennsylvania Railroad* v. *Locomotive Truck Co.*, 110 U. S. 491; *Miller* v. *Force,* 116 U. S. 22; *Dreyfus* v. *Searle*, 124 U. S. 60. And the same result must follow, although the earlier skein is not patented, if it embodies substantially the same form, and for a like use.

The function and purpose of the prior skein and the patented device were exactly analogous, operated in the same way, and were serviceable in both cases to preserve the skein from entanglement, the patented skein being applicable to a later stage of the thread. This, within the principle announced in *Smith* v. *Nichols*, 21 Wall. 112, would constitute simply a mere carrying forward or extended application of the original device with the change only in degree, but doing substantially the same thing in the same way by substantially the same means with some better results, and would not, therefore, be patentable.

The difference insisted upon in support of the patent, that the looser lacing of the skein across the band to preserve its form and keep it in condition suitable for dyeing the thread, is clearly a matter of mechanical skill which does not involve invention. It is said by one of complainant's witnesses that such loose lacing, as is insisted upon as a requisite for effective dyeing, is neither shown in the drawings, nor in the specification nor claims, but that it should be read into the patent, because " a man that understands his business must know that it must be laced loosely or that the silk would be spoiled in dyeing," and that, if this were not noticed or not known, it would be taught him by the first experiment. It is perfectly evident that it would readily occur to any one skilled in the art that, as the skeins are increased in size or width of band, the necessity for lacing in order to preserve the form and keep the skein in a condition for dyeing would be correspondingly increased, and that the looser the lacing the more perfect would be the dyeing. Such changes in degree, merely, would not constitute an invention. *Estey* v. *Burdett*, 109 U. S. 633.

It is settled that distinct and formal claims are necessary to ascertain the scope of the invention. *Merrill* v. *Yeomans*, 94 U. S. 568; *Western Electric Co.* v. *Ansonia Brass & Copper Co.*, 114 U. S. 447.

If, therefore, the elements of " boiling off," or ungumming the silk, or the dyeing thereof, and of improving the winding facility, were patentable, in view of the prior skeins, they should have been covered by the claims of the patent. *James* v. *Campbell*, 104 U. S. 356, and authorities cited above.

The disclaimer takes away nothing from the claims except what is not in condition for dyeing, and no silk thread is in condition for dyeing by simply being cross-reeled and laced. The patent, notwithstanding the disclaimer, is still for an old device of a cross-reeled and laced skein for whatever purpose it may be designed, and is void for want of patentable novelty. The counsel for the appellant, while claiming the benefit of his disclaimer, and insisting that Grant's skein is distinguishable from the earlier anticipating skeins, for the reason that the latter were coated with gum and were not loosely laced, states that

"Grant's specification addresses its direction wholly to the skein-maker, never to the dyer. It says: 'My invention relates to a novel manner of winding silk or other thread upon the reels in a reeling machine preparatory to its being dyed.' . . . 'My improvement consists in winding the silk or other thread upon the reel in the form of a wide band.' . . . 'When the required quantity has been wound, I lace the skein or band . . . so as to divide it into a number of parts and hold it in its flat or band-like condition.' Grant had a clear idea of the real nub of his invention. He says : 'This lacing constitutes the chief point of my invention, and is what preserves the skein in its shape and prevents its becoming entangled in the process of dyeing.' Grant gives no instruction to the dyer or the winder, for the simple reason that in dyeing his skein and afterwards winding it upon bobbins the procedure is identical with the procedure of the old art. *All that is novel is found in the skein,* and that answers the question, Is Grant's improvement a skein or a process ? That answer is : Grant's improvement is a new skein." So that the whole invention must be tested by the simple question whether the looser lacing for the purpose of dyeing, over the more tightly laced skeins for the purpose of preserving their form and winding qualities, while being " boiled off " or ungummed, constitutes a patentable invention. Considering the purpose for which it is now claimed, it cannot be anything more than a mere application of an old process to a new use, which does not rise to the dignity of invention, the looser lacing for the purposes of dyeing being perfectly apparent to any one skilled in the art of silk manufacture, or in the preparation of thread for that purpose. But while it is thus claimed that the Grant specification addresses itself to the direction wholly of the skein-maker, and never to the dyer, the disclaimer undertakes to confine such direction solely to the dyer, rather than to the skein-maker, as the effect of the disclaimer is intended to exclude skeins " which, by reason of being coated with gum or by reason of the manner of its lacing or for any other reason, is not in condition for dyeing for ordinary manufacturing purposes." So that, under the operation of the disclaimer,

the specification and claims would have to be read as addressed to the dyer rather than to the skein-maker. This would involve a complete change of what was covered by the specification and claims, which must be held controlling.

The most that can be said of this Grant patent is that it is a discovery of a new use for an old device which does not involve patentability. However useful the nature of the new use to which the skein is sought to be confined by the disclaimer, compared with the former uses to which the old skein was applied at the date of the improvement, it forms only an analogous or double use, or one so cognate. and similar to the uses and purposes of the former cross-reeled and laced skein as not to involve anything more than mechanical skill, and does not constitute invention, as is well settled by authorities already referred to.

The advantages claimed for it, and which it no doubt possesses to. a considerable degree, cannot be held to change this result, it being well settled that utility cannot control the language of the statute, which limits the benefit of the patent laws to things which are new as well as useful. The fact that the patented article has gone into general use is evidence of its utility, but not conclusive of that and still less of its patentable novelty. *McClain* v. *Ortmayer*, 141 U. S. 419, 425, and authorities there cited.

Our conclusion is that there was no error in the decree of the court below, and the same is accordingly

*Affirmed.*