WLM:la

**BAUER PATENT CORPORATION,**
Plaintiff

v.

**WESTINGHOUSE ELECTRIC CORPO-
RATION and Duke Power Com-
pany, Defendants.**

**Civ. A. No. 1073.**

United States District Court
W. D. North Carolina,
Charlotte Division.

May 5, 1961.

Corey, Hart & Stemple, New York City, William H. Bobbitt, Jr., Charlotte, N. C., for plaintiff.

C. Blake Townsend, Carroll G. Harper, New York City, Hunter M. Jones, Charlotte, N. C., for defendants.

WARLICK, District Judge.

This is an action for an alleged patent infringement. The plaintiff is a New York corporation to which the patent was assigned on November 18, 1948. The

patent Numbered 2,111,136, for a "Wing Turbine Unit" was filed in the United States Patent Office on May 21, 1934, by August Bauer, and was issued to him on March 15, 1938. The patent expired on March 15, 1955. This action was commenced on January 12, 1955.

The patent embodies six claims, but only one is alleged to have been infringed, this being Claim Number 1. The alleged infringing devices are so called centrifugal "Airfoil" fans, manufactured by the Sturtevant Division of the defendant, Westinghouse Electric Corporation, at its Hyde Park, Massachusetts factory, and sold and delivered to the defendant, Duke Power Company, and installed in its Buck Station at Spencer, North Carolina. Four of the accused fans were so purchased and installed and are being used for the purpose of moving the maximum amount of air through the coal being burned in its steam boilers, in order to maintain proper combustion. Coal and its actual firing is essential in producing steam to operate the steam turbines which in turn drive the electric power generators. The claim alleged to be infringed is as follows:

"1. A continuous system of wing-shaped turbine blades, adapted to be applied for steam and gas turbines and compressors, radially arranged and gradually deflected into a final substantially tangential direction, said blades being so spaced as to define Venturi-shaped passageways there between, said passageways consisting of wide openings between the arcuate leading edges of said wing-shaped blades, narrow necks and a gradually widening channel toward the periphery of the turbine rotor, whereby the outward flow of the elastic fluid through said passageways results in a rarefication thereof on one side and a densification thereof on the other side of each blade, thereby creating a combination force of pressure and suction similar to the airplane wing theory."

A reading of this claim certainly indicates a considerable complexity to the mind of one not an engineer, and obviously makes necessary much study so that its full meaning and purpose can be ascertained and understood. Such a study indicates that the essence of the Bauer invention, according to plaintiff's evidence, and its contentions, is that a cross-section of each of the blades in the fan is similar to the cross-section of a conventional airplane wing. In addition to the airplane wing concept, the spacing between successive blades has the shape of a Venturi. This word does not seem to have any well-established meaning, but to an engineer would unquestionably mean a shape in which there is a definite contraction followed by a definite expansion. It would seem to be a channel having a wide opening which converges or narrows down to a small neck, and then diverges again to a wider opening. Venturi shaped passageways as used in the so-called Bauer patent must therefore mean passageways for the flow of air, or other compressible fluid, so shaped that there would be a definite contraction followed by a definite expansion of the area of flow. It would thereby seem evident that the distinctive features of the Bauer patent are of the shaping and spacing of the blades of the device.

The issue in this case is whether the fans manufactured by the defendant Westinghouse, purchased, installed and used by the defendant Duke Power, from the period of their purchase in early 1950 until the expiration of the Bauer patent in 1955, did actually infringe such alleged patent.

The plaintiff seeks to recover damages for the use of the fans during that period, but does not ask for an injunction to prevent future use or sale as the so-called patent and any rights thereunder have expired.

The defendant denies infringement, pleads the invalidity of plaintiff's patent, both for direct anticipation by the prior art and for lack of invention in view of the prior art.

The Bauer patent is a so-called paper patent, never commercialized and of

which only models were made, and at the trial, August Bauer admitted while testifying that these models as made departed somewhat from the showing of the patent itself.

Plaintiff contends on the allegations made and the evidence heard that in 1938 the subject matter of this patent application was disclosed to the Sturtevant Fan Company which was later merged with the defendant Westinghouse Electric Corporation, but that after a study it was rejected by it.—and that from the information so obtained the accused devices were made.

That August Bauer who filed for the patent never contended that he was the inventor of the airplane wing or of venturi sections, but that in contrast he conceived the idea that it would be extremely desirable to transfer the teaching of the aeronautical art and particularly the flow of air over airplane wings, into the fan field by shaping the fan blades similarly to airplane wings, which of necessity would require venturi passages between succeeding blades when the plurality of them are spaced around the center of a circle; that he was the first to combine this with the airplane wing-shape, incorporating same into an air compressor or turbine; that he as such inventor was years ahead of the field; and that in assembling these elements through his knowledge of the art, he brought forth for the public use through this mechanical advance a useful and far-reaching appliance. That Westinghouse, recognizing its validity, seized upon it and manufactured and sold the accused appliances to Duke and to other large users of such machinery; that Westinghouse advertised this product extensively in many leading periodicals and mechanical publications; and that in so doing it infringed plaintiff's rights under the patent.

Naturally these are just a few of the many contentions advanced by plaintiff from the evidence offered in the case.

The defendants contend that plaintiff's patent is invalid both for direct anticipation by the prior art and for lack of invention in view of the said prior art. That the so called "airfoil" low-pressure forced draft centrifugal fan manufactured by the defendant Westinghouse is a far cry from the elements which make up and are comprised in the alleged Bauer invention,—that the two operate on an entirely different theory, and that there is little if any similarity between the two devices. That its evidence embraces as many as thirty different references to prior knowledge in all of which it is made to appear that there is nothing new or novel about plaintiff's patent. That all of its factors were known to the art and that it is lacking in invention over the prior art. That whatever is shown in the Bauer patent was clearly within the skill of an ordinary mechanic at the date of the alleged invention. That the asserted difference between the Bauer blades and those of the other devices, including the prior art showings, are only a matter of degree, and finally that the alleged invention is nothing more or less than an assemblage of well-known factors which at most only unite old elements with no change in their respective functions.

The trial was somewhat lengthy and the briefs and proposed findings of fact are equally of such length; however the issue in my opinion is narrowly drawn, and the facts as offered make peculiarly relevant the statement of Mr. Justice Jackson in the celebrated case of Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152–153, 71 S.Ct. 127, 130, 95 L.Ed. 162:

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract fro former resources freely available to skilled artisans. A Patent for a combination which only unites old elements with no change in their re-

spective functions, such as is presented here, obviously withdraws what already is known in the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly."

And in Lincoln Engineering Co. of Illinois v. Stewart-Warner Corporation, 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008, Mr. Justice Roberts remarked:

"The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention. And the improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination."

See, also, Deering v. Winona Harvester Works, 155 U.S. 286, 302, 15 S.Ct. 118, 39 L.Ed. 153; Underwood v. Gerber, 149 U.S. 224, 227, 229, 13 S.Ct. 854, 37 L.Ed. 710; In re Reed, 76 F.2d 907, 909, 22 CCPA 1182; Alemite Corporation v. Lubrair Corporation, 1 Cir., 62 F.2d 899, 901; Radio Corporation of America v. Lord, 3 Cir., 28 F.2d 257, 260; Todd v. Sears, Roebuck & Company, 4 Cir., 216 F.2d 594.

Further it might be pointed out that a patent should not be granted for the discovery of a result which would flow naturally from the teachings of the prior art. Application of Paul, 252 F.2d 306, 45 CCPA 793.

A patent of course is presumed valid and the burden of establishing its invalidity rests upon the party asserting it. 35 U.S.C. § 282. This burden has been said to be "a heavy one, as it has been held that 'every reasonable doubt should be resolved against * * *'" the party asserting invalidity. Mumm v. Jacob E. Decker & Sons, 1937, 301 U.S. 168, 171, 57 S.Ct. 675, 676, 677, 81 L.Ed. 983.

In order to carry this burden defendants brought forth several items of the prior art. First, they introduced "Die Pumpen", figure 130 on page 75 of a printed publication entitled "Die Pumpen" by H. Matthiessen and E. Fuchslocher, Third Edition, published by Julius Springer in Berlin, 1932, which was more than one year before the date of Bauer's alleged invention. An enlarged photograph of the wheel assembly of a centrifugal pump as described was shown to Bauer by defendant's counsel during a pre-trial examination. He testified with respect to the wheel assembly, in substance, that a fan so constructed would infringe his patent. To this admission or statement, defendants interpose an ancient axiom of the patent law: "That which infringes, if later, would anticipate, if earlier." Peters v. Active Manufacturing Co., 129 U.S. 530, 9 S.Ct. 389, 392, 32 L.Ed. 738; Grant v. Walter, 148 U.S. 547, 13 S.Ct. 699, 37 L.Ed. 552; Miller v. Eagle Manufacturing Company, 151 U.S. 186, 14 S.Ct. 310, 38 L.Ed. 121; Knapp v. Morss, 150 U.S. 221, 14 S.Ct. 81, 37 L.Ed. 1059. American Fruit Growers, Inc. v. Brogdex Co., 283 U.S. 1, 51 S.Ct. 328, 75 L.Ed. 801.

Counsel spent considerable time during the trial, in undertaking to determine whether pumps and fans may be considered equivalent in design theory; defendants offering evidence that they were, and that therefore the "Die Pumpen" design anticipated Bauer's patent. Plaintiff, on the other hand, while noting the similarity of design, contends that there was no reason to think that the teachings of the prior art such as "Die Pumpen" in pumps would lead to the new, unexpected, and surprising results that have been produced when the wing-shaped blade was substituted for use in a fan.

Analogous to the point advanced is the cited case wherein an improvement in ventilator wheels or fans was obtained by a patent for a hood-shaped piece at the end of each wing in the fan for the pur-

pose of holding the air from escaping. It appeared that the same device had long been used in the wings of propeller wheels for the purpose of holding water. In holding the patent invalid, Judge Colt said: "I cannot, after most careful consideration, call it invention to take the old hood-shaped blade of a water-wheel and place it in a ventilator wheel." Consolidated Patents Co. v. Berry, C.C.D.Mass. 1890, 41 F. 436, 437, appeal dismissed, 1893, 154 U.S. 499, 14 S.Ct. 1144, 38 L. Ed. 1074.

Charavay Patent No. 2,037,880, filed November 17, 1933, for a centrifugal air-blowing fan having "airfoil" shaped blades with converging and diverging passages between the blades and also with the outer tips of the blades "deflected into a final substantially tangential direction" was also cited by the defendants as prior art. There is no difference in position or annular arrangement between the Charavay blades and those of Bauer; and the shape of the intervening passageways (i. e., converging-diverging or what Bauer calls "Venturi-shaped") is identical. The only difference is one of form or shape of the blades themselves, and in that connection the Supreme Court has held:

"A change only in form, proportion or degree, the substitution of equivalents, doing substantially the same thing in the same way by substantially the same means with better results, is not such invention as will sustain a patent." Smith v. Nichols, 1874, 21 Wall. 112, 119, 22 L.Ed. 566.

■ Lysholm Patent No. 1,927,944, issued in September 1933, and assigned to Aktiebologet Ljungströms, Angturbin, a well-known Swedish company, clearly shows and teaches the rounding off of the noses of the blades. Resemblance of the Bauer blades to the prior art Lysholm blades and the virtual identity of Bauer with Charavay when the latter is rounded as taught by Lysholm leads one to the inevitable conclusion that a monopoly should not be granted to this plaintiff on its combination of old elements, for it

has been held that the improvement of one element or part in a combination of old elements or parts does not entitle a patentee to a monopoly on the entire combination. Lincoln Engineering Co. v. Stewart-Warner Corp., supra.

The defendants' evidence deals with much particularity to other of the references found among the thirty set out in the answer. However a further discussion of those would seem somewhat inappropriate and at least are not found relevant to this decision.

Turning now to the question of infringement, plaintiff relies quite heavily upon the sales catalogs published by the defendant Westinghouse, with regard to the accused fans, and other advertising media which was used by it in giving information to the trade regarding such fans. At various places the phrase "Another Westinghouse First" appears, indicating as the plaintiff contends that this claim is such that Westinghouse holds itself out to the trade as the originator of the various elements of the accused devices.

■ With respect to advertising claims, Judge Sobeloff in Johnson & Johnson v. Carolina Lee Knitting Co., 4 Cir., 258 F.2d 593, 599, says:

"While advertising claims alone may not be sufficient to make out a case of infringement, cf., Motorfrigerator Co. v. Frigidaire Sales Corporation, 4 Cir., 1932, 59 F.2d 622 (although they may give rise to other causes of action) the Courts have in numerous instances relied on advertisements as admissions by the defendant of the infringing nature of the accused product. See, e. g., Potts v. Creager, 1895, 155 U.S. 597, 15 S.Ct. 194, 39 L.Ed. 275; Gibbs v. Triumph Trap Co., 2 Cir., 1928, 26 F.2d 312; Schlicht Heat, Light & Power Co. v. Aeolipyle Co., C.C.S.D. N.Y.1902, 117 F. 299, 303; Wheatley v. Rex-Wide, Inc., 7 Cir., 1939, 102 F.2d 940, 942; University of Illinois Foundation v. Block Drug Co., D.C.E.D.Ill.1955, 133 F.Supp. 580."

However, in this action it seems without question that plaintiff has placed too much reliance upon this advertising data and too little upon actual comparison of the drawings of the patent as against the accused machines. Consequently plaintiff is not aided by its claim of infringement through advertising.

In making a comparison of the blade shapes it is noted that in plaintiff's patent the tails of the blades *are* "gradually deflected into a final, substantially tangential direction" while in the defendants' fans the tails of the blades *are not* so "gradually deflected into a substantially tangential direction".

Defendants' evidence tended to show that the tails or trailing edges of its fan blades are directed $27\frac{1}{2}°$ away from a tangential direction and if the direction were in fact tangential, or even substantially tangential, no useful work would be done by the fan because the pressure produced by such a fan would be too small to move the air, in that if the air came off the tails truly tangentially, the machine would not handle any air nor develop any pressure, and the energy output of the machine would approach zero.

Plaintiff says that substantially tangential merely means blade tails deflected nearer to the tangential direction than to the radial direction; tangential direction meaning 90° removed from radial direction. Therefore, plaintiff says that anything beyond 45° is substantially tangential. By this it would seem that plaintiff attempts to encompass too wide a range, and though the defendants' blades deflect nearer tangential than radial, there is not such deflection as to make it substantially tangential, hence it is found that the defendants' departure from a substantially tangential direction is a material and substantially significant departure.

It further appears that defendants' blades are not "so spaced as to define Venturi-shaped passageways there between" as required by Bauer's claim. Bauer's specifications define "so spaced" as being "mutually overlapping spaced relations, as clearly illustrated in Fig. 1 and 2", of the patent. The testimony also discloses that defendants' fan blades were not "mutually overlapping" and that there is sufficient space between the tail of one blade and the nose of the next so that a person looking from the center of rotation could see blue sky between the blades. A visual comparison of the exhibits of the separate devices, both plaintiff's and defendants', shows that such could not be done with the plaintiff's blade arrangement.

As for the "Venturi-shaped" passageways or convergence-divergence between blades, it is further found that defendants' fans have far less convergence followed by divergence than many items of the prior art. In fact, ten items of prior art were shown to intervene between the pronounced Venturi-shaped passageways of a Bauer's apparatus and defendants' fans with respect to convergence-divergence of the passageways; which is to say, that defendants' fans have less than was common in the prior art and plaintiff's patent claim has more. Moreover, it is clear from the weight of the evidence that defendants' fan blades do not have "Venturi-shaped passageways" between them; that the spacing of defendants' blades was as wide as possible in order to pass the maximum volume of air between the blades. The Bauer claim also calls for "wide openings between the arcuate leading edges" of the blades, "narrow necks" and "a gradually widening channel toward the periphery of the turbine rotor". By comparison of Bauer's apparatus drawn to the same scale as defendants' fan, it is seen that defendants' blades are much wider apart than are Bauer's, and in this respect do not come within the coverage of the claim.

Finally it is found as a fact that defendants have further refuted plaintiff's claim of infringement by showing that the Westinghouse fans do not have the rarefication and densification relation described in the Bauer claim.

Thus it appears from the uncontroverted evidence that the accused devices have neither the pressure distribution required by Bauer nor the reversal of that distri-

bution. Defendants' blades have neither airplane action nor a reversal thereof, but have increased pressure on both surfaces at the tails of the blades, which is due to the centrifugal action of the rapidly rotating fan, while an airplane wing does not have such pressure.

This has truly been a battle between experts,—four having been offered by the parties in interest during the development of the evidence. Their testimony is embraced in approximately five hundred pages of the record. Surely one not trained, as they have been, must of necessity study the evidence offered with much care and, in so doing, cut between the words, descriptions, forms and verbiage, and come up with an answer that reflects the actual facts and which, when read into the record, speaks the truth. This I have tried to do. With what success, I know not. How much easier my task would have been had plainer terms been given and more understandable words been used.

### Conclusion.

 From the foregoing findings I conclude that United States Patent No. 2,111,136 is *invalid* for that the claims therein are not the product of invention but rather the exercise of the skill of the calling, and plainly indicated by the prior art. Electric Cable Joint Co. v. Brooklyn Edison Co., 292 U.S. 69, 54 S.Ct. 586, 78 L.Ed. 1131; Textile Machine Works v. Louis Hirsch Textile Machines, 302 U.S. 490, 58 S.Ct. 291, 82 L.Ed. 382.

That the patent has not been *infringed* in that defendants' fans do not bring about a performance of substantially the same function in substantially the same way, to obtain the same result, as the law requires. Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147.

This opinion embodies all the findings of fact and conclusions of law which the Court deems necessary for a final disposition of the case. Federal Rules of Civil Procedure, Rule 52, 28 U.S.C.A.

If counsel desires a fuller statement and submits such request more specific findings and conclusions will be made.

A judgment carrying into effect this decision will be signed and entered upon submission.