**DIVERSIFIED PRODUCTS CORPORA-TION and Newman, Dukes & Cline, Inc., Plaintiffs,**

v.

**SPORTS STORES, INC., and Manson-Billard, Inc., Defendants.**

Civ. No. 16848.

United States District Court
D. Maryland.

Dec. 31, 1968.

See also D.C., 42 F.R.D. 3.

George M. Hopkins, Edward Taylor Newton and Newton, Hopkins & Ormsby, Atalnta, Ga., and Francis J. Meagher and Goodman, Meagher & Enoch, Baltimore, Md., for plaintiffs.

Harvey B. Jacobson, Jr., Washington, D. C., and Harry K. Lott and Herbert J. Belgrad, Baltimore, Md., for defendants.

HARVEY, District Judge:

The plaintiffs are here seeking an injunction and damages for the alleged infringement of two different patents, United States Patent No. 3,171,652, a mechanical patent, and United States Design Patent No. 203,608, a design patent. The mechanical patent is for an exercising weight filled with solidified material and the second patent in suit is for a design for a barbell weight.

The mechanical patent (Newman '652) was issued on March 2, 1965 to Joe W. Newman. As a result of subsequent assignments, it was owned at the time of suit by the two corporate plaintiffs, Diversified Products Corporation and Newman, Dukes & Cline, Inc. The design patent (James '837) was issued on February 22, 1966 to Forrest H. James, Jr. and thereafter assigned to the plaintiff Diversified Products Corporation. The defendant, Manson-Billard, Inc., manufactures and sells exercising weights and other products in the exercising field and is thereby in competition with the plaintiffs. The other defendant, Sports Stores, Inc., has purchased exercising weights from Manson-Billard and, in turn, has sold such products at retail in this judicial district.[1] The defendants claim that the mechanical patent is invalid because of (a) lack of novelty under 35 U.S.C. § 102, (b) obviousness of the subject matter under 35 U.S.C. § 103, and (c) indefiniteness under 35 U.S.C. § 112. It is likewise claimed that the design patent is invalid because of anticipation, and

1. The amended complaint named as defendants Sports Center Co., Inc., Nathan Bernstein doing business as Sports Center and Billard Barbell Company, Inc. Pursuant to the pretrial order, the individual defendant, Nathan Bernstein, was dismissed from the litigation, and the correct names of the two corporate defendants were listed as Sports Stores, Inc. and Manson-Billard, Inc.

defendants deny infringement of both patents.[2]

Most of the testimony and argument and substantially all of the exhibits in this case were directed to the issues that relate to the mechanical patent, and the discussion that follows will therefore be primarily focused on that patent.

## I. The Mechanical Patent

Only one claim is involved in Newman '652. What is claimed is:

"An exercising weight of fixed value for use with barbells comprising a shell of resilient plastic material having a cavity therein filled with a solidified dense material, said shell having walls with indentations therein projecting into the solidified dense material within the shell."

Analysis of this claim indicates that the exercising weight alleged to be the invention combines three separate elements: (1) a shell of resilient plastic material; (2) a cavity in such shell filled with a solidified dense material; and (3) indentations in the walls of the shell projecting into the solidified dense material within the shell. According to the specifications, weights used on barbells and other exercising apparatus have customarily been made of cast iron or other metals. The claimed invention replaces these metal weights with a plastic shell filled preferably with concrete or with some other dense material. It is claimed that such weights will not rust and are therefore cleaner and more attractive than metal, that they will not mar wood or tile floor coverings, and that the form of the invention prevents chipping, spilling or other undesirable loss of weight.

### Validity

Four United States patents and one foreign patent were cited by the examiner as references in Newman '652 as follows:

### UNITED STATES PATENTS

| Inventor | Device | Number | Issuance Date |
|---|---|---|---|
| Calvert | dumb bell | 907,965 | December 29, 1908 |
| Krudop | barbell | 1,270,034 | June 18, 1918 |
| Smith | exercising device | 1,918,142 | July 11, 1933 |
| Trzesniewski | barbell | 2,447,218 | March 9, 1945 |

### FOREIGN PATENT

| | | | |
|---|---|---|---|
| Longbottom (Great Britain) | exercising device | 499,305 | January 16, 1939 |

———◆———

Examination of the record of the prosecution of the patent in suit discloses that the examiner placed particular reliance on Krudop '034, Trzesniewski '218 and Longbotton '305 in rejecting various claims originally submitted by the inventor. Calvert '965 merely discloses a dumb bell which could be filled with shot for increased weight while in Smith '142 the metal weights at either end of the device were to be connected to the handle by springs and enclosed in a covering or jacket of rubber or other suitable material. Krudop '034 discloses a barbell with adjustable weights made of reinforced concrete. In Trzesniewski '218 which is also a patent for a barbell, the individual metallic weights are covered by a plastic or cushion cover to eliminate noise and a hard impact when the weights are used

---

2. A counterclaim asserted by the defendant Manson-Billard against the plaintiff Diversified Products has been withdrawn.

on a hard surface floor. Longbottom '305 discloses a tin or iron container of various sizes to hold concrete and to act as a barbell disc for use in weight lifting and physical culture.

Newman's original application was filed on September 13, 1961 and contained eight claims relating to "improvements in the design of the weights used in barbells and the like." All of such claims were rejected, and this first application was abandoned after the filing of a second application by the same inventor on March 21, 1962. The second application presented fifteen claims, all of which were rejected by the examiner. Following subsequent amendments, the one claim that was finally allowed was presented as claim 21 and was a rewriting of claim 14 of the second application.

In rejecting claim 15 in the amendment to the second application filed on March 19, 1963, the examiner said the following:

"Subsequent to the date of the British patent, pliable materials, e. g. rubber and rubberlike plastics, such as polyethylene, were used for encasing weights, as exemplified by the patent to Trzesniewski. To substitute any selected one of this recently utilized group of materials for the tinned iron container of the British patent would be obvious to one skilled in the art."

The prosecution history thus indicates that the patent examiner was of the opinion that a combination of a plastic shell and a concrete filler for use as an exercising weight was not patentable. Several of the prior art patents cited by the examiner disclosed a plastic shell or a concrete filler, but none disclosed indentations in the shell walls. Therefore, the element which was added and which the examiner found to be not disclosed by the prior art consisted of the indentations in the shell projecting into the filler material.

Defendants contend that the most pertinent prior art was not cited or considered by the patent examiner. Defendants rely on U. S. Patent No. 3,-185,255 for a ballast element issued to M. S. Bird and on two different devices, the Mattel "Power Arm" barbell weight and the Marine Corps barbell weight. 35 U.S.C. § 282 provides that a patent shall be presumed valid and that the burden of establishing invalidity rests upon the party asserting it. See Collins v. Kraft, 144 F.Supp. 162, 168 (D.Md.1956). However, the presumption is rebuttable. Triumph Hosiery Mills, Inc. v. Alamance Industries, Inc., 299 F.2d 793, 801 (4th Cir. 1962), cert. den. 370 U.S. 924, 82 S.Ct. 1566, 8 L.Ed.2d 504 (1962). If pertinent prior art was not cited by the patent examiner during his consideration of the application, the presumption of validity is weakened or destroyed. Heyl and Patterson, Inc. v. McDowell Co., 317 F.2d 719, 722 (4th Cir. 1963); Maibohm v. RCA Victor Co., 89 F.2d 317, 321 (4th Cir. 1937).

Bird '255 discloses a ballast element which is comprised substantially of concrete material. Such element includes a container made entirely of plastic material, the container being formed into a predetermined permanent shape and being filled with a hardened concrete substance. The evidence discloses that such ballast element does not have indentations projecting into the filler material, although the shape of the container is such that there is an indentation projecting into the concrete material near the base of the container which would have a similar if not the identical effect as that claimed for the indentations of the Newman patent.

Mattel, Inc. is a manufacturer of toys located in Hawthorne, California. In 1958 and 1959, this company manufactured and sold a product known as "Power Arm Barbells". Each set consisted of a number of different sized weights and bars and included an instruction sheet for assembly. The weights were in fact polyethylene shells containing a cavity to be filled at the option of the user with water, sand or wet sand. The walls of each shell contained indentations which projected into the filler material within

the shell. These barbell sets were described and pictured in the Mattel catalogs for both 1958 and 1959.

The Marine Corps device was a home-made barbell constructed by filling large juice cans with cement and securing them to the ends of 5-foot lengths of iron pipe. The tin juice cans had 3-ringed indentations which projected into the concrete with which the can was filled. The January 1959 issue of the physical fitness publication Strength and Health contains on its cover a color photograph showing Marine Corps recruits using these home-made barbells in their training. An article commencing at page 24 of such publication and written by Captain (now Major) George E. Otott, describes the manner in which these devices were made.

### (a) Anticipation

 An invention is anticipated when the prior art disclosure is identical in substance with it. Goodwin v. Borg-Warner Corp., 157 F.2d 267 (6th Cir. 1946), cert. den. 329 U.S. 799, 67 S.Ct. 491, 91 L.Ed. 683 (1947); Deller's Walker on Patents, 2d Ed. § 57. A mechanical patent is anticipated by a prior device of like construction and capable of performing the same function. Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 22 S.Ct. 698, 46 L.Ed. 968 (1902). It is necessary that all of the elements of the invention or their equivalents be found in one single structure or description, where they do substantially the same work in substantially the same way. Preformed Line Products Co. v. Fanner Mfg. Co., 328 F.2d 265, 271 (6th Cir. 1964), cert. den. 379 U.S. 846, 85 S.Ct. 56, 13 L.Ed.2d 51 (1964).[3]

No one of the devices relied upon by defendants as anticipating Newman '652 combines all of the elements of the patent in suit. The Mattel Power Arm weight, when assembled, is clearly an exercising weight of fixed value containing a shell of resilient plastic material and further there are indentations in the walls of the shell projecting into the material to be contained therein. However, there is no solidified dense material to be used as a filler of the cavity contained in the Power Arm Shell. Instead, the instructions that accompany the Mattel device call for materials which are obviously not solidified, namely, water, sand or wet sand. The Marine Corps barbell, although using concrete to fill the cavity and although having indentations projecting into the concrete, has an outershell of tin rather than of plastic material.

 Bird '255 is perhaps closest in disclosing a device substantially identical with the claimed invention. Relying on Black and Decker Mfg. Co. v. Baltimore Truck Tire Service Corporation, 40 F.2d 910 (4th Cir. 1930), the plaintiffs argue that the Bird device is designed primarily for use with appliances which are subject to vibration, that it is not remotely concerned with a barbell weight, and that it therefore does not anticipate. It is established of course that although an inventor is conclusively presumed to know the prior art in his own and clearly allied lines of endeavor, he is not bound by what has been done in remote or nonanalogous arts. Allied Wheel Products v. Rude, 206 F.2d 752, 755 (6th Cir. 1953). Whether arts or uses are analogous depends upon the similarity of their elements and purposes. Wallace v. Mandel Bros., Inc., 164 F.2d 861 (7th Cir. 1947).

3. Some decisions indicate that as to a combination patent, it is not necessary that all of the elements be found in a single patent or publication, but it is enough if the whole of the prior art considered together discloses all of the claimed elements and if no new functional relationship arises from their combination. McCullough Tool Co. v. Wells Survey, Inc., 343 F.2d 381, 398 (10th Cir. 1965); Doran Coffee Roasting Co. v. Wyott Manufacturing Co., 267 F.2d 200 (10th Cir. 1959). The defendants have not urged the Court to adopt the rule of those cases but agree, citing, *inter alia*, Bain v. M. A. Hanna Co., 331 F.2d 974, 978 (6th Cir. 1964), that the Court in deciding whether the claim here is anticipated and lacks the requisite novelty must determine if a single prior art device includes each of the three elements previously mentioned.

The evidence here indicates that a ballast element used as a weight to be attached to appliances is indeed an analogous or kindred art to an exercising weight. The specifications of Bird '255 state as follows:

"Obviously, my combination of a plastic container with a concrete filler could assume many different shapes without departing from the inventive concepts here involved."

However, like the Mattel Power Arm and the Marine Corps barbell, the Bird device does not contain all of the elements of the patent in suit and therefore does not itself anticipate Newman '652. Although the Bird patent does disclose a plastic shell having a cavity filled with concrete, there are no "indentations" disclosed projecting into the solidified dense material within the plastic shell. The most that can be said is that there is an indentation at the base of the device which permits threaded bolts to extend laterally inwardly through holes in the vertical side flanges of the steel channel member forming a part of the appliance to which the ballast element is affixed. The location of such indentation near the base of the device cannot perform the function claimed for the indentations in the walls of the plastic shell of the patent in suit.

█ A consideration of the three devices principally relied upon by the defendants indicates that no one of these discloses a thing substantially identical with the claimed invention. Anticipation cannot be made out by selecting one part of one patent, part of another and still part of a third to build up a hypothetical construction which may answer the combination claims of a patent. Line Material Co. v. Brady Electric Mfg. Co., 7 F. 2d 48 (2nd Cir. 1925).

*(b) Obviousness*

Both Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d (1966), and United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L. Ed.2d 572 (1966), discuss the requirement under 35 U.S.C. § 103 that a patent to be valid must be non-obvious. In the *Graham* case, the Supreme Court said the following at pages 17–18, at page 694 of 86 S.Ct.:

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy."

█ Defendants rely on the same prior art in support of their § 103 defense as they have cited in claiming that the patent is invalid under § 102. However, whereas § 102 requires a showing of anticipation by a single prior art device, in determining the question of obviousness a court may look at the whole of the prior art considered together. Allied Wheel Products v. Rude, supra, 206 F.2d at page 761. The inquiry to be made by the court is primarily a factual one. Graham v. John Deere Co., supra, 383 U.S. at page 5, 86 S.Ct. 684.

Examination of the prior art shows that the three elements that are combined in the claim here were all known but not in this particular combination. The rule to be applied in a combination patent was stated in Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008 (1938):

"The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention."

In Great A. & P. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152,

71 S.Ct. 127, 130, 95 L.Ed. 162 (1950), the Supreme Court reaffirmed this rule and further said the following:

"The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. Elements may, of course, especially in chemistry or electronics, take on some new quality or function from being brought into concert, but this is not a usual result of uniting elements old in mechanics."

\* \* \* \* \* \*

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements."

As previously noted, the Mattel Power Arm weight contained all of the elements of the patent in suit except that it did not call for a solidified dense material as the filler of the cavity in its polyethylene shell. Sand and water were recommended by Mattel's instruction sheet as fillers for the shells of its weights. Assuredly it would have been reasonably obvious to one possessing ordinary skill in the art to fill the Mattel shell with concrete.[4] It would merely be necessary to add Portland cement, a common binder for sand and water, and all of the elements of the patent in suit would be present. As disclosed by Krudop '034 and Longbottom '305, the use of concrete as a filler material for barbell weights had been known for many years.

Plaintiffs urge that the Mattel device is no more than a toy and should not properly be considered as prior art in this suit. Although designed for use by boys, the weight of the Mattel shells could be adjusted so that the total barbell would

weigh 20 pounds.[5] Shells manufactured by Diversified Products come in two and one-half, five, ten and twenty-five pound weights, and its junior barbell set could be adjusted so as to weigh as little as five pounds. Under these circumstances, this Court finds that the Mattel device was similar to Newman '052 both as to its elements and its purposes and that such device as analogous or closely related art may properly be considered in this case.

It further appears that the Marine Corps barbell contained all of the elements of the patent in suit except that its outer shell was made of tin rather than of plastic material. By simply substituting plastic for the tin shell of Major Ottot's device, all of the elements of the claimed invention would be duplicated. To any one skilled in the art such a substitution would have been obvious. As the evidence shows, the substitution of plastic for metal has been common practice for many years. It is not invention to substitute a modern material for other material. B. F. Goodrich Co. v. United States Rubber Co., 244 F.2d 468 (4th Cir. 1957); Pollard v. American Phenolic Corp., 219 F.2d 360 (4th Cir. 1955).

There is no merit in plaintiffs' contention that the Marine Corps barbell should be disregarded as a home-made device. Indeed, the fact that Major Ottot in providing for the training needs of Marine Corps recruits was able to construct a device containing elements so similar to those of the patent in suit underscores the obviousness of the claimed invention. Nor is there validity to plaintiffs' claim that proof of the Marine Corps device was insufficient in this case. Major Ottot's testimony, which was taken by way of deposition and read into the record without objection, was corroborated fully by the Strength and Health publication admitted in evidence.

---

4. During final argument, it was conceded by the plaintiff that if the Mattel shell were filled with concrete instead of sand, it would constitute the invention.

5. By using two small shells and two large shells filled with wet sand, a weight of sixteen pounds for the Mattel Professional set could be achieved. In its Olympic set, four small shells and two large shells filled with wet sand would weigh twenty pounds.

382

Plaintiffs rely heavily on the commercial success of their product which they claim has been widely accepted. But commercial success is no more than a secondary consideration, and although relevant cannot save an otherwise invalid patent. Great A. & P. Tea Co. v. Supermarket Equipment Corp., supra, 340 U.S. at page 152, 71 S.Ct. 127; American Infra-Red Radiant Co. v. Lambert Industries, Inc., 360 F.2d 977, 989–990 (8th Cir. 1966), cert. den. 385 U.S. 920, 87 S. Ct. 233, 17 L.Ed.2d 144 (1966).

The evidence here indicates that the increase in sales of plastic covered barbell sets relied upon by the plaintiffs has been the result of aggressive advertising and the attractiveness of the product. The specifications of the patent in suit, by continually repeating words such as "attractive" or "colorful", show the importance that the inventor attached to the appearance of his device. In column 1, it is stated that metallic weights do not appear clean, healthful and "attractive" (line 22) and because of their coarse appearance many persons find it unpleasant and depressing to use them (lines 25–27). A stated object of the invention is to create a "colorful" and more "attractive" article (lines 39–40) and to provide a weight which by virtue of its construction, appearance and cleanliness is suitable for use in homes and other places. (lines 41–42) In column 2, it is stated that a plastic shell may be of various colors to add to the "attractiveness" of the weights (lines 4 and 5), that the color may be chosen to match or blend with surrounding colors of a room so that they are more "attractive" and "decorative" than the customary all metal barbell sets (lines 26–31), and that this barbell assembly possesses durability with "attractiveness" on a surface that is smooth, "colorful" and pleasing throughout. (lines 49–51).

As the Supreme Court said in McClain v. Ortmayer, 141 U.S. 419, at page 429, 12 S.Ct. 76, at page 79, 35 L.Ed. 800 (1891):

"If the generality of sales were made the test of patentability, it would result that a person by securing a patent upon some trifling variation from previously known methods, might, by energy in pushing sales or *by superiority in finishing or decorating his goods*, drive competitors out of the market, and secure a practical monopoly, without in fact having made the slightest contribution of value to the useful arts." (Emphasis added)

Nor do other secondary considerations relied upon by plaintiffs save this patent. No evidence has been produced to show that others sought but failed to produce that which plaintiffs claim to be an invention. Plaintiffs' proof as to a long-felt but unsolved need is inconclusive. In any event, a device which is obvious and thereby lacks invention cannot be rehabilitated by secondary considerations. As the Court said in Triumph Hosiery Mills, Inc. v. Alamance Industries, Inc., supra, 299 F. 2d at page 800:

"[I]t achieved notable commercial success and has the sincere flattery of industrial imitation. But these contentions admitted, they do not establish patentability. Noteworthy the patentees do not pinpoint the inventiveness. However significant and true, their assertions for the patent do not turn the old into the new, the obvious into the ingenious."

With reference to the question of obviousness then, this case presents a combination patent with old elements which produce no new or different function or operation. Pertinent prior art was not before the examiner and the presumption that the patent was valid has been weakened. A consideration of all the evidence including that prior art not before the examiner leads to the firm conclusion that the mechanical patent in suit is invalid. Instead of invention, the claim in issue represents "only the application of ordinary engineering and mechanical skill to a problem occurring in the normal progress of the art." Grinnell Corporation v. Virginia Electric and

Power Company, 401 F.2d 451, 453 (4th Cir. 1968).

### (c) Indefiniteness

In view of this Court's conclusion that the mechanical patent in suit is invalid for obviousness, it is not necessary to decide the other questions which have been presented in this case as to that patent. However, for the purpose of any subsequent appeal, this Court will consider briefly and rule on the issues of indefiniteness and infringement which have been presented.

35 U.S.C. § 112 provides that the specification of a patent shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention. The statutory requirement of particularity and distinctness in a claim is met when it clearly distinguishes what is claimed from what went before in the art and clearly circumscribes what is foreclosed from future enterprise. United Carbon Company v. Binney and Smith Co., 317 U.S. 228, 236, 63 S.Ct. 165, 87 L.Ed. 232 (1942).

There is no merit to defendants' contentions that the phrases "resilient plastic material" and "solidified dense material" in the claim are indefinite. However, there is considerable force to the argument that the word "indentations" as used in this claim is not sufficiently definite under § 112.

The claim provides for a shell having walls "with indentations therein projecting into the solidified dense material within the shell." The difficulty with the word "indentations" as so used is that no dimensions or other description of the required indenting is supplied. The inventor testified that indentations of at least one-sixteenth of an inch were necessary to achieve their purpose. Plaintiffs' expert testified that as defined by the claim the depth of the indentations was not limited, but that they should be of sufficient depth to assist in bonding the dense material to the shell, and in preventing relative movement of the filling material with respect to the shell. He further stated that he could not say how deep the indentations would have to be nor could he state whether one one-thousandth of an inch would be sufficient.

The word "indentations" assumes particular importance in view of the fact that as previously discussed it was the addition of this element to the claim which convinced the patent examiner that this invention was patentable. Even when the claim is read in the light of the specifications, it is impossible to determine what is foreclosed from future enterprise. Indeed the defendants' principal argument in support of their contention that they have not infringed the patent in suit is that the accused device does not have indentations which assist in bonding the shell to the filler. In the opinion of this Court the use of the word "indentations" in this claim is not sufficiently clear or distinct to satisfy the requirements of 35 U.S.C. § 112.

In Gunter & Cooke, Inc. v. Southern Electric Service Co., 256 F.Supp. 639 (M. D.N.C.1966), affirmed 378 F.2d 60 (4th Cir. 1967), the District Court found, *inter alia*, that a patent relating to a drive for textile carding machines was invalid because of indefiniteness in that there was nothing in the patent showing the width of the pulley, the width of the belt or the precise center distances between the pulleys. The Court quoted from Rice v. Nash-Kelvinator Corp., 150 F.2d 457, 460 (6th Cir. 1945), as follows:

"These portions of the claims describe not the structure, but the function or purpose to be achieved * * * The patent describes certain results, but does not tell how they are obtained * * *

"It is evident, therefore, that the patent does not inform persons skilled in the art as to the precise dimensions or the mathematical rules which must be applied in order to secure the results described. But this is fatal to the validity of the patent."

*Infringement*

In Graver Tank and Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 607, 70 S.Ct. 854, 855, 94 L.Ed. 1097 (1949), the Court said the following:

"In determining whether an accused device or composition infringes a valid patent, resort must be had in the first instance to the words of the claim. If accused matter falls clearly within the claim, infringement is made out and that is the end of it."

Assuming that it should be determined that the mechanical patent in suit is valid, the evidence here clearly establishes that the defendants' devices infringe Newman '652. The defendants do not deny that their exercising weights include a plastic shell containing a cavity filled with a solidified dense material. It is argued, however, that defendants' weights do not have indentations in the walls of the shell projecting into such dense material.

If it should be determined that the word "indentations" is sufficiently definite as used in the claim to satisfy the requirements of § 112, then the irregularities in the walls of defendants' shells would fall within the claim of the patent. If indentations of any depth are held to be sufficient to accomplish the bonding mentioned by the specifications, then the irregular shape of the outer sides of defendants' shells would accomplish the same purpose. For these reasons, this Court holds that if the mechanical patent is later held to be valid, defendants have infringed such patent.

## II. The Design Patent

■ James '837 claims an ornamental design for a barbell weight as shown in the three figures on the face of the patent. The barbell weight is of the same type as is disclosed in Newman '652. However, unlike Newman it shows a central sunburst type interlock system, and it is the design of the interlock portion of the weight which is claimed as invention.

The most frequently quoted definition of a patentable design is that set forth in Pelouze Scale and Mfg. Co. v. American Cutlery Co., 102 F. 916, at page 918 (7th Cir. 1900):

"* * * That characteristic of a physical substance which, by means of lines, images, configurations, and the like, taken as a whole, makes an impression, through the eye, upon the mind of the observer. The essence of a design resides, not in the elements of individuality, nor in their method of arrangement, but in the tout ensemble —in that indefinable whole that awakens some sensation in the observer's mind."

Defendants contend that the design of the patent in suit is substantially similar to that of an iron barbell weight sold in this country in March of 1962 and that therefore James '837 is invalid under 35 U.S.C. § 102(b). The test to be applied is that set forth by the Supreme Court in the leading case of Gorham Mfg. Co. v. White, 81 U.S. 511, 20 L.Ed. 731 (1872), as follows:

"What is the true test of identity of design? Plainly, it must be sameness of appearance; and mere difference of lines in the drawing or sketch, a greater or smaller number of lines or slight variances in configuration, if insufficient to change the effect upon the eye, will not destroy the substantial identity. An engraving which has many lines may present to the eye the same picture, and to the mind the same idea or conception as another with much fewer lines. The design, however, would be the same."

The testimony disclosed that Keystone Foundry and Machine Company of Lebanon, Pennsylvania, manufactured and sold in March 1962 cast iron exercise weights. In particular, weights were sold to Healthways, Incorporated, which in 1962 was one of the largest manufacturers of barbell weights in the country. These weights, examples of which are in evidence, were marked "Healthways National Fitness" and contained a central interlock system.

After a careful comparison of the Healthways National Fitness weight with the James patent, this Court concludes that the designs are substantially similar. Further comparison of the Healthways weight with defendants' device which is claimed to infringe shows the interlock designs to be almost identical. In his testimony, the inventor James himself conceded that the design of the patent in suit was similar to the design of the Healthways weight and that the interlock of defendants' accused weight was even closer to that of the Healthways device. Since the Healthways weight was sold in the United States more than one year prior to September 2, 1964, the date that James filed his application, and since the Healthways design is substantially similar to the one before the Court, the design patent is invalid under 35 U.S.C. § 102(b).

As the designs of the accused weight and the Healthways weight are practically identical, if James '837 is later held to be valid, then the defendants have clearly infringed the James' patent. That which infringes, if later, would anticipate if earlier. Bauer Patent Corp. v. Westinghouse Electric Corp., 193 F.Supp. 868, 871 (W.D.N.C.1961).

### Findings

This Court finds as facts and rules as a matter of law that:

1. The claim of Patent No. 3,171,652 is invalid.

2. If Patent No. 3,171,652 is valid, defendants' Billard barbell weights infringe the one claim of such patent.

3. The claim of Design Patent No. 203,608 is invalid.

4. If Design Patent No. 203,608 is valid, then the design of defendants' Billard barbell weights infringes the one claim of such patent.

This Court's findings of fact and conclusions of law under Rule 52(a) of the Federal Rules of Civil Procedure are embodied in the aforegoing opinion, whether or not expressly so characterized.

Counsel will prepare and submit within ten days an appropriate order.