**NATIONAL STEEL CORPORATION,**
Plaintiff,

v.

**BALTIMORE & OHIO RAILROAD**
and
Armco Steel Corporation., Defendants.

Civ. No. 18371.

United States District Court,
D. Maryland.

June 15, 1970.

Paul T. O'Neil, W. Cecil Townsend, and Shanley & O'Neil, Washington, D. C., and Michael P. Crocker and Piper & Marbury, Baltimore, Md., for plaintiff.

John W. Melville, Charles H. Melville, and Melville, Strasser, Foster & Hoffman, Cincinnati, Ohio, and Robert M. Thomas and Venable, Baetjer & Howard, Baltimore, Md., for defendants.

HARVEY, District Judge:

In this patent action, plaintiff here claims infringement of United States Patent No. 2,667,243, relating to a steel flooring for railway freight cars into which nails can be driven and removed. The patent in question was originally granted to Harry D. Fenske on January 26, 1954 and was thereafter assigned to and is now owned by National Steel Corporation, the plaintiff.

National Steel claims that the Baltimore and Ohio Railroad Company, one of the defendants, is guilty of direct infringement of this patent under 35 U.S. C. § 271(a) and that Armco Steel Corporation, the other defendant, is guilty of inducing infringement by the B. & O. under 35 U.S.C. § 271(b) and of contributory infringement under 35 U.S.C. § 271(c).[1] The plaintiff seeks an injunction against infringement of the Fenske patent, an accounting, damages and oth-

1. Almost two years after institution of this suit, plaintiff filed an amended complaint claiming infringement by Armco of another patent owned by plaintiff, Altenburger No. 3,010,822, relating to certain improvements in mild carbon steels. As the issues concerning the Altenburger patent had little to do with the Fenske patent, the trial in this case proceeded solely on the basis of the allegations of the original complaint with questions concerning the Altenburger patent being severed and reserved for later trial.

er relief. The usual defenses of invalidity and non-infringement have been asserted by the defendants and in addition the defendant Armco denies inducement of infringement and contributory infringement.

### The patent in suit

Only Claim 1 of the patent is involved in this case. What is claimed is as follows:

"1. In a freight conveyance of the type in which freight in transit is subject to forces tending to move the freight relative to the conveyance, the combination comprising, a conveying supporting structure mounted for movement which sets up the forces and a metallic floor construction carried thereby to which blocking can be nailed for preventing shifting of freight in transit, the metallic floor construction including a plurality of long narrow metallic structural members arranged side by side, each structural member including a panel having a freight engaging face directed away from the conveying supporting structure, the freight engaging faces of the plurality of structural members being arranged at a uniform level to form the surface of the floor, a pair of side reinforcing webs joined to each panel along the side edges thereof and extending laterally from the panel in a direction toward the conveying supporting structure, a flange joined to at least one web on each structural member and extending laterally from said web along the edge removed from the panel, said flange being in the engagement with the conveying supporting structure, means including rigid connection between flanges of the structural members and the conveying supporting structure integrating the metallic floor construction and conveying supporting structure and holding the structural members in side by side relation in the conveyance with the opposed webs of adjacent structural members contiguous to form a slot therebetween, the opposed webs being shaped and spaced to receive snugly therebetween a nail driven into the slot, means acting between the opposed webs for deforming and retaining nails driven into the nailing slot, the faces of the panels and the entrances to the nailing slots being exposed for engaging freight and for receiving nails for blocking the freight, respectively, and a closure means of mastic material closing the entrance to each nailing slot along the length of the nailing slot at substantially the level of the surface of the floor."

In essence, the combination claimed included a conveying supporting structure and metallic floor construction made of a number of long, narrow, metallic structural members with means to form a slot to receive nails, means for deforming and retaining nails driven into the slot and a closure means of mastic material. Each metallic structural member included a freight engaging face, a pair of side reinforcing webs and a flange joined to at least one web on each structural member.

According to the specifications, it had been the practice in the past in freight conveyances such as wooden railroad freight cars to prevent freight from shifting by nailing stop blocks to the floors and walls of the cars. However, this practice contributed to the destruction of wooden floors because of re-nailing and wearing conditions from the freight. Furthermore, cargoes such as loose grain and sand would sift through the nail holes and cracks started by nail holes. The specifications accordingly stated that objects of the invention were to provide for freight conveyances a new and improved all metallic nailable interior surface structure which would stand hard usage without need of periodic repair, to provide further a structure which was economical to manufacture and construct and also to provide an interior surface structure which would make a freight conveyance suitable for carrying loose or unpackaged cargoes such as grain and sand without danger

of such loose material sifting through nail slots. An essential part of the invention was therefore a closure means of mastic material which would fill each nailing slot to substantially the level of the surface of the floor. According to the specifications, any mastic or gummy material might be used as filler closing the nailing slots "to prevent loss of loose material freight through the nailing slots."

### Validity

It is defendants' position that this combination patent is invalid because of obviousness. In asserting this defense, defendants rely on 35 U.S.C. § 103, which provides as follows:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

The requirement under 35 U.S.C. § 103 that a patent to be valid must be non-obvious was discussed by the Supreme Court in both Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) and in United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966). In the *Graham* case the Supreme Court said the following at pages 17–18, 86 S.Ct. at p. 69:

"While the ultimate question of patent validity is one of law, [Great] A. & P. Tea Co. v. Supermarket [equipment] Corp., *supra*, [340 U.S. 147], at 155, [71 S.Ct. 127, at 131, 95 L.Ed. 162], the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy."

The inquiry to be made by the Court is primarily a factual one. Graham v. John Deere Co., *supra*, 383 U.S. at p. 5, 86 S.Ct. 684; Diversified Products Corporation v. Sports Stores, Inc., 294 F.Supp. 375, 380 (D.Md.1968). Furthermore, it is well settled that an invention is construed not only in the light of the claims but also with reference to the file wrapper or prosecution history in the Patent Office. Graham v. John Deere Co., *supra*, 383 U.S. at p. 33, 86 S.Ct. 684.

Examination of the record of the prosecution of the patent in suit indicates that its history was a long and tortuous one. The application that was finally granted was filed February 16, 1946 (almost 8 years before the patent was issued) and was stated to be a continuation in part of an earlier application filed by the same inventor on January 12, 1945 and thereafter abandoned. After successive rejections of all claims on three prior occasions followed by various amendments by the applicant and the addition of new claims, the patent examiner finally rejected all claims on August 14, 1951. The applicant thereupon further amended his application and at the same time filed an appeal to the Board of Appeals with reference to six claims. After full briefing, the Board of Appeals heard oral argument on November 24, 1952 and in a written decision dated December 19, 1952 affirmed the primary examiner's rejection

of all six claims. The applicant then filed a petition for reconsideration with respect to only two claims, namely Nos. 30 and 33, together with a brief in support of such petition. Without further hearing, the Board of Appeals on February 24, 1953 reversed its earlier decision and granted the petition as to these claims, which after further amendment became the two claims of the patent in suit which became effective on January 26, 1954.

In his final rejection of all claims in the amended application, the primary examiner had relied upon the following patents:

| Inventor | Device | Number | Issuance Date |
| --- | --- | --- | --- |
| Buelow | Structural element | 1,900,541 | Mar. 7, 1933 |
| Main | Structural element | 2,028,554 | Jan. 21, 1936 |
| Marks | Floor and ceiling | 2,084,853 | June 22, 1937 |
| Bradfield | Metal floor construction | 2,180,504 | Nov. 21, 1939 |

In considering the means included in several of the claims for closing the nail slots, the primary examiner in his final rejection of all claims concluded that claims 30 and 33 were unpatentable over Marks '853 in view of Bradfield '504. He reasoned that Bradfield taught the filling with mastic of the passageways or slots between the flooring members of Marks. In its original decision dated December 19, 1952, the Board of Appeals agreed with such conclusion. In this connection, the Board said the following at pages 3 and 4 of such decision:

"The patent to Bradfield et al relates to a metal floor construction for a freight car. It is relied upon to show the use of a mastic filler to seal the joints between adjacent channel members forming the floor of the freight car.

\* \* \* \* \* \*

"\* \* \* The Examiner considers that the patent to Bradfield et al discloses the use of a similar filler member for filling the space between metal channel members forming the floor of a freight car and that invention would not be involved in using similar material in the patent to Marks. We agree with the Examiner in this respect."

In his petition for reconsideration, the applicant stated that the mastic filler material had "critical significance" as an element of the claimed structure and asserted that the Board in its decision had overlooked the special coaction between the mastic filler material and the remainder of the combination. The applicant argued at page 8 of his petition that it was "the mastic qualities, the 'self-healing' characteristic, of this element of Appellant's floor which acts in concert with the rest of the floor structure to give uniqueness to the entire combination."

After considering such petition without further hearing, the Board agreed with the applicant's position. In its decision granting the petition, the Board said the following:

"We have carefully reviewed our decision in view of the advantages, pointed out in the petition, of the use of a mastic filler to fill up the nailable slots in the steel floor whereby appellant's construction not only provides a railroad car floor having the advantages of both a steel floor and a

wood floor, but which in addition provides a car floor having advantages over the usual wood car floor in that it gives unlimited renailability in an impervious car floor. The reference Bradfield et al relied upon by us to show the use of a mastic filler for a steel car floor does not, in our opinion, teach the desirability of a mastic filler to fill up the nail slots of a steel car floor to prevent the danger of loss, through the nailing slots, of bulk cargo such as grain, sand, etc., being transported by the railroad car while retaining the feature of unlimited renailability. In view of the above reasons, we now consider that claims 30 and 33 define a combination which is not properly anticipated by the references and which defines invention thereover."

This file history shows that it was the use of the mastic filler together with other elements of the claimed invention that convinced the Board of Appeals that the combination was in fact patentable. In this suit, it is defendants' principal contention that the use of a mastic element in such a combination as the one before this Court was disclosed in a patent not cited by the patent examiner or by the Board of Appeals. The defendants rely heavily on United States Patent No. 2,186,567 for a railway car floor issued to DeWitt R. Arnold on January 9, 1940. Defendants assert that the Arnold patent, which relates to a railway car floor covered with an apertured or slotted metal plate, specifically teaches the filling of the apertures with a mastic material which would permit a nail to be driven into the wooden floor under the steel plate and would heal itself when the nail was withdrawn.

■ Before the pertinency of Arnold '567 is discussed, it should be noted that the plaintiff has taken the position in this Court that in any event other ele-

ments of the alleged invention besides the mastic filler are sufficiently non-obvious in this combination to furnish grounds for issuance of the patent. Both the original Examiner and the Board of Appeals held that the basic combination without the mastic was unpatentable. In its petition for reconsideration, the applicant did not seriously challenge this conclusion and did not seek review of the Board's decision as to four of the six claims.[2] In asking the Board to reconsider only as to claims 30 and 33, the applicant's argument was essentially that the mastic filler material together with the other elements of the combination presented a unique feature of the device which required reversal of the primary examiner's rejection of these claims. Even though it cannot be said that applicant formally acquiesced in the finding by the primary examiner and the Board of Appeals that the combination without the mastic filler was not patentable, it is clear that the rejection of such combination by the Patent Office for lack of invention is presumed to be correct. Magnaflux Corp. v. Coe, 78 U.S.App.D.C. 258, 139 F.2d 531, 532 (1943); Reynolds v. Aghnides, 123 U.S. App.D.C. 28, 356 F.2d 367 (1966).

In any event, the evidence in this case clearly establishes that the combination here without the mastic filler would have been obvious in view of the prior art to a person of ordinary skill. The references which establish such unpatentability are Buelow '541, Main '554 and Marks '853. The Buelow patent shows a metallic structural element consisting of components so arranged as to include a nailing slot with channels or grooves between two opposing members suitably deformed as to receive and retain a nail driven into such slot. The Buelow device includes metallic structural members, forming a slot, and means for the forming and retaining of nails

2. Although not acquiescing in the Board's conclusion concerning the basic combination without the mastic, the applicant made it clear in his petition for reconsideration that it would be fruitless to re- argue these other issues which had been squarely placed before the Board, fully considered and decided adversely to applicant.

driven into such slot. The Marks patent is similar and specifically discloses the use of metal structural members in a floor. The metal members are so arranged as to leave a space between adjacent members into which a nail may be driven for attachment of wooden flooring. The Main patent likewise discloses a structural element consisting of a number of structural members so arranged as to receive and retain nails or other fastener elements. Each structural member includes a surface, flanges and longitudinally extending complimentary corrugations to form the nailing grooves or slots. In combination, these three patents disclose all the elements of the patent in suit except for the mastic filler. It would assuredly have been reasonably obvious to one possessing ordinary skill in the art to apply the teachings of these three patents to a structure designed to be the floor of a freight carrying conveyance such as a railroad car.

Plaintiff argues in this Court as the applicant did before the Board of Appeals that whether or not the combination was patentable in the absence of the mastic filler, the mastic acting in concert with other elements of the combination produces a device that is nonobvious and is therefore patentable. The rule to be applied in a combination patent was stated in Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U. S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008 (1938), as follows:

"The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention."

This rule was reaffirmed in Great A. & P. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162 (1950), and more recently in Anderson's-Black Rock, Inc. v. Pavement Salvage Co., Inc., 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969). In the *Anderson's-Black Rock, Inc.* case, which involved a patent covering means for treating bituminous pavement, the District Court concluded that all the plaintiff had done was to construct four elements known in the prior art on one chassis. The Court of Appeals for the Fourth Circuit, in a 2–1 decision with Judge Craven dissenting, held that the patent was not invalid for obviousness. In reversing, the Supreme Court stated that the question for determination was whether this combination of old elements created a valid combination patent. After considering whether the inclusion of a radiant burner in the combination (radiant heat being old in the art) would satisfy the obviousness requirement, the Court concluded as follows, at pages 60–61, 90 S.Ct. at pp. 307–308:

"The convenience of putting the burner together with the other elements in one machine, though perhaps a matter of great convenience, did not produce a 'new or different function,' Lincoln [Engineering] Co. [of Illinois] v. Stewart-Warner Corp., 303 U.S. 545, 549, [58 S.Ct. 662, 82 L.Ed. 1008], within the test of validity of combination patents.

"A combination of elements may result in an effect greater than the sum of the several effects taken separately. No such synergistic result is argued here. It is, however, fervently argued that the combination filled a long felt want and has enjoyed commercial success. But those matters 'without invention will not make patentability.' [Great] A&P Tea Co. v. Supermarket Corp., 340 U.S. 147, 153, [71 S.Ct. 127, 95 L.Ed. 162]."

The evidence in this case clearly establishes that Arnold, '567, teaches the use of a mastic material to fill space between openings in metallic flooring in a railway car. The Arnold patent relates specifically to the floor of a railway freight car. The various claims disclose a flooring comprising a metallic sheeting to cover a wooden railway car floor,

there being a number of apertures in the metallic covering to permit the driving of nails into the wooden underfloor. All of the claims provide for a "penetrable plastic material" to fill the apertures in the metallic sheeting and claims 2 and 3 specifically refer to the plastic material as "self-healing". It is clear from the specifications and Figures 2, 3 and 4 that the inventor contemplated that the plastic material would fill the apertures to such an extent that the upper surface would be flush with the upper surface of the metallic covering and that such an arrangement would permit not only the driving of nails but also because of the plastic nature of the material the healing of the breach when the nails were withdrawn. As stated in the specifications:

> "In each of these constructions the top surface is level and forms a support for the load, and also in each, nailing of the blocking is permitted, while the openings formed when the nails are withdrawn are healed by the plastic material."

■■ The presumption under 35 U. S.C. § 282 that a patent is valid is a rebuttable one.[3] Triumph Hosiery Mills, Inc. v. Alamance Industries, Inc., 299 F. 2d 793, 801 (4th Cir.1962), cert. denied 370 U.S. 924, 82 S.Ct. 1566, 8 L.Ed.2d 504 (1962); Diversified Products Corporation v. Sports Stores, Inc., *supra*. If pertinent prior art was not cited by the patent examiner during his consideration of the application, the presumption

of validity is weakened or destroyed. Heyl & Patterson, Inc. v. McDowell Co., 317 F.2d 719, 722 (4th Cir.1963); Maibohm v. RCA Victor Co., 89 F.2d 317, 321 (4th Cir.1937); Diversified Products Corporation v. Sports Stores, Inc., *supra*. In this case, the prior art not cited by either the patent examiner or the Board of Appeals was particularly pertinent. As discussed hereinabove, Arnold '567 specifically related to a railway car floor, disclosed a metallic covering for the floor with apertures or slots permitting the driving of nails to prevent loads from shifting and further disclosed a self-healing plastic material filling such apertures. Under such circumstances, as the Fourth Circuit Court of Appeals said in Blumcraft of Pittsburgh v. Citizens and Southern National Bank of South Carolina, 407 F.2d 557, 561 (4th Cir. 1969), cert. denied, 395 U. S. 961, 89 S.Ct. 2103, 23 L.Ed.2d 747 (1969), "the prima facie presumption of the patent's validity (35 U.S.C. § 282) can be given little weight."

The Arnold patent was issued only some five years before the application was initially made for the patent in suit.[4] The patent examiner relied on Bradfield '504 in concluding that the use of a similar filler as that claimed by Fenske had been previously disclosed. As the Board of Appeals pointed out, Bradfield did not disclose that the filler would continue to fill up the slots of the floor and still retain the feature of unlimited renailability.[5] As the Arnold

3. The plaintiff argues that the presumption of validity is further strengthened here because the patent was finally allowed by the Board of Appeals after an extensive prosecution history. But as Judge Craven noted in Cook Engineering and Electronics, Inc. v. Hickory Foundry & Machine Co., 231 F.Supp. 271, 273 (W.D. N.C.1964), the fact of numerous rejections over a lengthy prosecution period likewise supports an inference that the final allowance is suspect. See also Hoover Company v. Mitchell Mfg. Co., 269 F.2d 795 (7th Cir. 1959).

4. Arnold was no paper patent. The evidence shows that this type of flooring was actually used in railway box cars in 1941, and a photograph taken in that year was admitted in evidence showing filler material being applied to fill up the holes in the apertured flooring and provide a smooth surface.

5. The Bradfield invention related to a metallic floor for railway cars especially of the refrigerator type in which a waterproof construction was necessary. The specifications provided that the single joint preferred for the construction of refrigerator cars might be filled with asphalt or some other waterproof substance to seal such joint yet permit relative movement of the floor sections. There

patent clearly covers these features, it is doubtful that the Board of Appeals would have reversed its original conclusion had Arnold been before it.

The plaintiff argues that Arnold does not teach the use of a mastic filler to prevent the loss of cargoes such as loose grain and sand through nail holes in the flooring of a railway car. According to the Arnold specifications, one of the purposes of that patent was to prevent damage to freight held in paper and cloth sacks resulting from contact with the uneven surface of the flooring. One of the Arnold claims accordingly provided for the mastic filler to present "an unbroken top surface for supporting the lading." The drawings clearly show that the mastic is designed to fill the apertures completely so that the freight-bearing surface of the flooring will be even. As nails were driven through the apertures in Arnold and into the wooden flooring beneath, loose cargoes such as grain and sand would have sifted into the nail holes in the absence of the mastic filler. Certainly it would have been obvious to one skilled in the art that the unbroken top surface of the structure created by the self-healing qualities of Arnold's mastic filler would prevent loss of loose materials such as grain or sand just as they would prevent damage to freight in cloth or paper bags. The filler provided for in the patent in suit protects cargo loss in the same manner as does Arnold by filling up the slots completely and furnishing an unbroken bearing surface for all kinds of freight.

■ This Court finds that the use of a self-healing mastic as a filler for nailing slots was not new in the art. Furthermore, the proof has not established that there was any synergistic effect or new or different function resulting from the use of the mastic filler in combination with the other elements of this mechanical patent. The alleged invention

here is no more than the mere aggregation of a number of old elements which in combination perform no new or different function than theretofore performed by such elements. This Court concludes then that the combination was reasonably obvious to one possessing ordinary skill in the art and is not patentable under 35 U.S.C. § 103.

At the trial, the plaintiff in support of its contention that the mastic in combination with the other elements did produce a synergistic effect offered evidence that the mastic had a lubricating effect.[6] But nowhere in the specifications, claim or file wrapper of the patent is this advantage either disclosed or claimed. Such alleged effect is therefore no more than an afterthought which cannot form the basis of patentability. Graham v. John Deere Co., supra, 383 U.S. at 23, 86 S.Ct. 684; Lincoln Engineering Co. v. Stewart-Warner Corp., supra, 303 U.S. at 550, 58 S.Ct. 662, 82 L.Ed. 1008; Tinnerman Prod. Inc., v. George K. Garrett Co., 292 F.2d 137 (3rd Cir.1961).

■■ Much of plaintiff's proof was designed to show that the Fenske invention met a long felt but unsolved need and that it enjoyed considerable commercial success. But these are no more than secondary considerations and although relevant and persuasive in a close case, they cannot save a patent which otherwise lacks invention. Anderson's Black Rock, Inc. v. Pavement Salvage Co., Inc., supra, 396 U.S. at 61, 90 S.Ct. 305, 24 L.Ed.2d 258; Great A&P Tea Co. v. Supermarket Equipment Corp., supra, 340 U.S. at page 152, 71 S.Ct. 127, 95 L.Ed. 162; Diversified Products Corporation v. Sport Stores, Inc., supra, 294 F.Supp. at 382; Cummins Engine Company v. General Motors Corporation, 299 F.Supp. 59 (D.Md. 1969). In a case such as the present one where the facts show that the invention was obvious when viewed in the

---

was no reference in Bradfield to the use of nails to secure lading.

6. It is undoubtedly more difficult to prove a synergistic effect resulting from a

combination of old elements in a mechanical patent than it would be if a chemical patent were involved.

light of the relevant prior art, secondary tests cannot be controlling. Graham v. John Deere Co., *supra;* Great A&P Tea Co. v. Supermarket Equipment Corp., *supra.*

### Infringement

■ Although this Court's conclusion that the patent in suit was invalid disposes of this case, findings will likewise be made as to the other issues that were tried so that the record will be complete in the event of an appeal. See Mabs, Inc. v. Piedmont Shirt Company, 368 F.2d 570 (4th Cir.1966). However, no extended discussion will be undertaken as to these other issues.

■ Consideration of the testimony and other evidence here leads this Court to conclude that assuming validity of the patent, the accused structure, which is manufactured by the defendant Armco, does not infringe the patent in suit for two reasons.

It should first be noted that the claim in suit provides for:

"* * *, means including rigid connection between flanges of the structural members and the conveying supporting structure integrating the metallic floor construction and conveying supporting structure and holding the structural members in side by side relation in the conveyance with the opposed webs of adjacent structural members *contiguous to form a slot* therebetween, * * *."

According to the specifications, this connection may be by way of rivets (as one of the drawings shows) or by welding. In any event, it is clear that at least one flange of each structural member must be secured to the conveying supporting structure. In defendants' floor, however, the C-shaped channels (or structural members) are not in contact with the conveying supporting structure, nor rigidly connected or secured in any way. Defendants' structure results in the formation of a slot between the structural members but it accomplishes this objective in a way

quite different from that disclosed in the Fenske patent.

Secondly, the claim in suit futher provides as follows:

"* * *, *the opposed webs* being shaped and spaced to receive snugly therebetween a nail driven into the slot, means acting between *the opposed webs* for deforming and retaining nails driven into the nailing slot, * * *." (Emphasis added.)

The evidence discloses, as does Figure 3 of the patent, that nails driven into the slots are deformed when they come into contact with the opposing webs. Plaintiff's patent contemplates successive deformations of the nail to give a high degree of retention. On the other hand, defendants' structure accomplishes such *bending and retention in quite a different* way. There is only a single bending of a nail driven into the slot in defendants' structure and the bending is accomplished not between the opposed webs but between the web and the flange of opposing members. The evidence indicates that the actual bending occurs entirely below the surface of the flange of the C-shaped channel and is therefore not "between the opposed webs" as provided in the claim of the patent in suit. In reaching this conclusion, this Court rejects the contention of plaintiff that the curved transition portions or bends between the webs and the flanges of the accused device were portions of the web. The word "edges" was used in the specifications of the Fenske patent in a non-technical sense and does not have the *technical meaning ascribed to it by plaintiff.*

For these reasons, then, this Court holds that assuming validity, defendants have not infringed the patent in suit.

### Other Issues

■ Assuming validity and infringement, this Court finds that the plaintiff has proved that Armco was guilty of inducing infringement under 35 U.S.C. § 271(b) and of contributory infringement under 35 U.S.C. § 271(c). Therefore, if plaintiff were entitled to a

**944**

judgment against B & O for direct infringement, it would likewise be entitled to judgment against Armco as an infringer by inducement and as a contributory infringer.

### Findings

This Court finds as facts and rules as a matter of law that:

1. Claim 1 of Patent No. 2,667,243 is invalid.

2. If Claim 1 of Patent No. 2,667,243 were valid, the steel nailable floor manufactured by the defendant Armco Steel Corporation would not infringe such claim.

3. If Claim 1 of Patent No. 2,667,243 were valid and infringed, the plaintiff would be entitled to judgment against defendant Baltimore & Ohio Railroad for direct infringement and against defendant Armco Steel Corporation for inducing infringement and for contributory infringement.

This Court's findings of fact and conclusions of law under Rule 52(a) of the Federal Rules of Civil Procedure are embodied in the foregoing opinion, whether or not expressly so characterized.

Counsel will prepare and submit within 10 days an appropriate order.