The WARD MACHINERY COMPANY, Plaintiff,

v.

WM. C. STALEY MACHINERY CORPORATION, Defendant.

Civ. No. 72–683–H.

United States District Court, D. Maryland.

Feb. 24, 1976.

Roberts B. Larson, Washington, D. C., Walter G. Finch, Baltimore, Md., and

Marvin Petry, Washington, D. C., for plaintiff.

William D. Denson, New York City, and Eric S. Spector, Washington, D. C., for defendant.

ALEXANDER HARVEY, II, District Judge:

In this civil action, the plaintiff is claiming infringement of United States Patent No. 3,588,095, which was issued on June 28, 1971 to Henry D. Ward, Jr., William F. Ward and John H. Bachman, Jr.[1] The patent in suit is a mechanical patent and relates to a suction table system for the feeding of warped sheets into machinery which makes boxes from corrugated paperboard.

The Ward Machinery Company,[2] assignee of the patent and plaintiff herein, manufactures box-making machinery at its plant in Cockeysville, Maryland. The patent in suit relates to a structure located at the initial stage of a production line and designed to feed rectangular sheets of corrugated paperboard of various sizes into machinery for processing into boxes or containers. The suction table system disclosed by the patent is specifically intended to permit warped sheets to be fed into the box-making machinery for processing at high rates of speed.

The defendant is Wm. C. Staley Machinery Corporation, a competitor of the plaintiff's, also located in Baltimore County, Maryland. Defendant asserts the usual defenses of invalidity and non-infringement, contending in particular that the patent in suit is invalid (1) because of obviousness under 35 U.S.C. § 103; (2) because of anticipation by the prior art under 35 U.S.C. § 102(a); (3) because the invention claimed was on sale in the United States more than one year prior to the date of the application for the patent under 35 U.S.C. § 102(b); (4) because of indefiniteness under 35 U.S.C. § 112; and (5) because the applicants committed fraud on the Patent Office in procuring the issuance of the patent. Defendant has counterclaimed, seeking a declaratory judgment that the patent in suit is invalid and that it has not infringed the patent.

For the reasons set forth hereunder, this Court has concluded that U. S. Patent No. 3,588,095 is invalid under 35 U.S.C. § 103 because of obviousness. Because such invalidity so clearly appears on the record here, it is not necessary to and the Court will not therefore undertake to decide any of the other issues of invalidity presented, here nor will the Court address itself to the issue of infringement.

The relationship of this case to litigation pending in another District should here be mentioned. Besides suing the defendant in this case, The Ward Machinery Company filed a similar action in the United States District Court for the District of New Jersey against The Langston Company, another competitor, claiming that Langston had also infringed this very same patent. *Ward Machinery Company v. The Langston Company,* Civil No. 1256–72, United States District Court for the District of New Jersey. That case involved similar issues of validity as were presented here.

Following extensive pre-trial proceedings and the filing of lengthy pre-trial briefs, the trial of this case commenced on November 10, 1975 and lasted for some three weeks. Final argument was heard on Friday, November 28, 1975. The New Jersey case was scheduled to commence before Judge Stanley S. Brotman in Camden, the very next Monday, December 1, 1975. At the conclusion of his argument in this case, counsel for the defendant moved for an immediate judgment, pointing out that if this Court ruled in favor of the defendant on the issue of invalidity, the defendant in the *Langston* case would move immediately for a judgment in the New Jersey Court under *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402

1. The Wards are officers and principal stockholders of The Ward Machinery Company, plaintiff herein.

2. At the time of the patent application, ·The Ward Machinery Company was known as The Ward-Turner Machinery Company.

U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

Although declining to enter immediate judgment at the conclusion of the final argument, this Court undertook over the weekend of November 28–30, 1975 to review the briefs, exhibits and transcripts in the light of the final arguments. Following such review, this Court concluded that the defendant was entitled to judgment on the issue of validity. Therefore, on Monday morning, December 1, 1975, an Order was entered finding that the patent in suit was invalid under 35 U.S.C. § 103 because of obviousness, entering judgment in favor of the defendant and providing that the Court's written findings and conclusions would be filed at a later date. Judge Brotman and counsel were promptly notified of this Court's action so that the New Jersey proceedings might properly reflect the finding of invalidity made by this Court.

### The Patent in Suit

There are fifteen claims in the patent in suit, and plaintiff contends that eight of the fifteen claims have been infringed by the defendant. However, only Claims 1, 14 and 15 need be considered by the Court in deciding the issue of validity, as the other claims in issue are dependent upon these. Claim 14, which is typical, is as follows:

14. A sheet feeding system for feeding sheets from a stack thereof, comprising, structure including a threshold member and gate means spaced therefrom to form an opening along one side of said stack for the passage of an outermost sheet of said stack through said opening, reciprocating means including a lip positioned along the opposite side of said stack, and means for initially engaging by suction at least a centermost portion of the surface of said outermost sheet of said stack and thereafter engaging by suction successive portions of at least some of the remaining surface of said sheet and for urging said outermost sheet towards said reciprocating means to insure positive engagement of said lip of said reciprocating means with the trailing end of said outermost sheet so that said lip of said reciprocating means pushes said outermost sheet through said opening between said threshold member and gate means.

As the specifications indicate, the invention claimed relates generally to sheet feeders in the box manufacturing industry. By linking a series of machines together, sheets of corrugated paperboard can be cut, slotted, printed, folded, glued and otherwise made into boxes or containers by a box manufacturer.[3] The suction table disclosed by the patent is at the very beginning of the manufacturing process and is designed to permit rapid feeding of paperboard sheets into the box-making machinery. Stacks of rectangular sheets are placed by an attendant between a front and rear gate on the table. A feeder plate connected to a reciprocating arm pushes the lowermost sheet into the nip of the feed rolls, which then delivers the feed to the various machines downstream. Thus, the structure disclosed performs the function of removing a sheet from a stack and starting it on its way.[4]

Corrugated paperboard, which is the material used by box manufacturers, is subject to various degrees of warping, depending upon the moisture content of the air. Warped sheets present particular problems to the box-making industry. If sheets in a stack are warped, the feeding system cannot operate because, depending upon the amount of warp, the feeder plate may not engage the trailing edge of the sheet or the leading edge of

---

3. Different machines sequentially perform the various different functions in the production line.

4. What path the sheet takes after entering the nip of the feed rolls is not material in any way to the claims of the patent in suit.

the sheet may not pass through the front gate into the nip rollers.[5] The patent in suit sought to solve this problem by using a suction means which would pull the lowermost sheet down by means of a vacuum and flatten it at both the leading and trailing edges of the sheet for proper feeding. As disclosed by the patent, the vacuum box was made in two sections so that sheets of varying size could be handled.

In order to start the operation of the machine, an attendant fills the hopper with sheets and switches on the vacuum. The lowest sheet is then sucked down by vacuum pressure and is fed into the nip of the rotating rolls by the forward motion of the feeder plate engaging the trailing edge of the sheet. As the feeder plate starts its return stroke to the rear, it separates from the trailing edge of the sheet, thus exposing the next sheet to vacuum pressure. This next sheet is then sucked down as the feeder plate is being retracted. The departing sheet is then pulled through the nip rolls, and when the feeder plate has been fully retracted, the next sheet will have been completely flattened out by the vacuum pressure and will be ready to be pushed forward by the feeder plate as it once again starts its feed stroke. This feeding and sucking process continues until all the sheets in the stack have been fed into the machinery.

### The Issue of Obviousness

#### (a) The applicable law

The defendant contends that this combination patent is invalid because of obviousness. In asserting this defense, defendant relies on 35 U.S.C. § 103, which provides as follows:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

It is conceded in this case that all the elements of the patent in suit are old, but plaintiff is claiming that this aggregation of old parts or elements is patentable because the parts in combination perform a new and different function. The rule to be applied in a combination patent was stated by the Supreme Court in *Lincoln Engineering Co. v. Stewart-Warner Corp.*, 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008 (1938), as follows (at page 549, 58 S.Ct. at p. 664):

> The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention.

This rule was reaffirmed in *Great A&P Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950), in which the Supreme Court said the following (at page 152, 71 S.Ct. at p. 130):

> The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. Elements may, of course, especially in chemistry or electronics, take on some new quality or function from being brought into concert, but this is not a usual result of uniting elements old in mechanics.

In the past ten years, the Supreme Court has had occasion to discuss the Section 103 requirement of nonobviousness on several different occasions. In

---

5. Sheets may warp so as to be either concave up or convex down when in position for feeding. However, it is warping of the former type which causes the most problems. Thus, Figures 5, 6 and 7 of the patent in suit show sheets in the hopper which are warped concave up.

both *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), and in the companion case of *United States v. Adams,* 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966), the Supreme Court considered this statutory requirement that a patent to be valid must be nonobvious. In the *Graham* case, the Supreme Court said the following (383 U.S. at pages 17–18, 86 S.Ct. at p. 694):

While the ultimate question of patent validity is one of law, *[Great] A&P Tea Co. v. Supermarket [Equipment] Corp., supra,* 340 U.S. 147, at 155, 71 S.Ct. 127, at 131, 95 L.Ed. 162, the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unresolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy.

In the more recent case of *Anderson's-Black Rock, Inc. v. Pavement Salvage Co., Inc.,* 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969), the Supreme Court had before it a combination patent which was under attack on the ground that it was nonobvious. That case involved a patent covering means for treating bituminous pavement, and the District Court had concluded that all the plaintiff had done was to construct four elements known in the prior art on one chassis. The Court of Appeals for the Fourth Circuit, in a 2 to 1 decision with Judge Craven dissenting, held that the patent was not invalid for obviousness. In reversing, the Supreme Court stated that

the question for determination was whether this combination of old elements created a valid combination patent. After considering whether the inclusion of a radiant burner in the combination (radiant heat being old in the art) would satisfy the obviousness requirement of § 103, the Court concluded as follows (at pages 60–61, 90 S.Ct. at p. 307):

The combination of putting the burner together with the other elements in one machine, though perhaps a matter of great convenience, did not produce a "new or different function," *Lincoln [Engineering] Co. [of Illinois] v. Stewart-Warner Corp.,* 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008, within the test of validity of combination patents. A combination of elements may result in an effect greater than the sum of the several effects taken separately. No such synergistic result is argued here. It is, however fervently argued that the combination filled a long felt want and has enjoyed commercial success. But those matters "without invention will not make patentability." *[Great] A&P Tea Co. v. Supermarket Corp.* 340 U.S. 147, 153, 71 S.Ct. 127, 130, 95 L.Ed. 162.

This Court has applied these principles in several recent cases in which combination patents were claimed to be invalid because of obviousness. In *Porter-Cable Machine Company v. Black & Decker Manufacturing Company,* 274 F.Supp. 905 (D.Md.1967), *aff'd* 402 F.2d 517 (4th Cir. 1968), *cert. denied,* 393 U.S. 1063, 89 S.Ct. 716, 21 L.Ed.2d 706 (1969), this Court upheld a patent for a saber saw structure, concluding that the combination transcended the art of a skilled mechanic and satisfied the § 103 requirement of nonobviousness. In *Diversified Products Corporation v. Sports Stores, Inc.,* 294 F.Supp. 375 (D.Md.1968), a combination patent for an exercising weight filled with solidified material was found by this Court to be invalid because of obviousness. Similarly, in *National Steel Corporation v. Baltimore & Ohio Railroad,* 313 F.Supp. 934 (D.Md.1970), this Court found that a patent relating to a

steel flooring for railway freight cars was no more than an aggregation of a number of old elements performing no new or different function and concluded that the combination was reasonably obvious to one possessing ordinary skill in the art and therefore not patentable under § 103.

■■ In each case, the inquiry to be made by the Court under § 103 is primarily a factual one. *Graham v. John Deere Co., supra,* 383 U.S. at 5; *Diversified Products Corporation v. Sports Stores, Inc., supra,* at 380. On the record in this case,[6] it is concluded that it would have been obvious to one skilled in the art to combine these old elements in the manner disclosed by the patent in suit, in view of the teachings of the so-called "Newark" machine[7] and the Frostad patent, No. 1,790,910.

### (b) The facts

Much of the evidence in this case related to the Newark machine, which was not a patented device but which concededly had been manufactured and sold by the plaintiff more than one year before the filing of the application for the patent in suit.[8] The Newark machine contained all the elements of the patent in suit except that its vacuum box was smaller than the vacuum box disclosed in the patent in suit and no adjustable supplementary vacuum box was used.

Reduced to its essentials, Claim 14 of the patent in suit includes (1) a sheet-feeding system for feeding sheets from a stack; (2) a threshold member and gate means spaced to form an opening along one side of the stack for the passage of the bottom sheet of the stack through the opening; (3) reciprocating means, including a lip for feeding the sheets; (4) means for engaging by suction initially the centermost portion of the bottom sheet of the stack; (5) means for thereafter engaging by suction other portions of the remaining surface of the sheet; and (6) means for urging the bottom sheet towards the reciprocating means to insure positive engagement with the trailing end of the sheet so that the sheet would be pushed through the opening between the threshold member and the gate means. All of these elements are found in the Newark machine. The major difference is that the Newark machine had a small vacuum box which was no more than ten inches wide, measured in the direction of the feed.[9] The specifications of the patent in suit indicate that the machine disclosed in the drawings has two vacuum boxes which are approximately thirty inches wide, including a main and an adjustable supplementary vacuum box. However, it is indicated that the adjustable supplementary box may be dispensed with for feeding short sheets. Thus, if this portion of the vacuum is shut off, the patented device like the Newark machine will operate with a single vacuum box, although its box will be much wider than that of the Newark machine.

Five United States Patents were cited by the Patent Examiner as references in Ward '095, as follows:

---

6. The exhibits in this case included colored charts, models and various patents. In addition, the Court viewed numerous motion pictures which showed the actual operation of the machines discussed by the witnesses.

7. Early in this case, counsel referred to this particular machine as the "Newark-Type" because a machine of this type was located at and observed by counsel at the plant of the Express Container Corporation in Newark, New Jersey. For the sake of convenience, counsel and the Court have continued throughout the pre-trial and trial proceedings to refer to this machine as the "Newark-Type". In this Opinion, it will be referred to as the "Newark machine".

8. As previously indicated, this Court will not undertake to decide whether the Newark machine anticipates the patent in suit under § 102(a) or whether its prior sale would invalidate the patent under § 102(b).

9. This dimension is referred to as the width in the specifications and will be so referred to in this Opinion. The measurement proceeds from the feed gate in the direction of the feeder plate.

| Inventor | Device | Number | Issuance Date |
|---|---|---|---|
| Markley | Card feed apparatus | 3,096,087 | July 2, 1963 |
| Bishop I | Mechanism for feeding cardboard and like blanks to creasing, slotting, folding or other treating machinery | 3,105,681 | October 1, 1963 |
| Bishop II | Suction feed mechanism for cardboard and like blanks | 3,171,647 | March 2, 1965 |
| Dixon | Vacuum feed | 2,827,290 | March 18, 1958 |
| Lohr | Control for card feed | 3,151,863 | October 6, 1964 |

In claiming anticipation by the prior art, defendant has introduced in evidence copies of the following additional United States Patents:

| Inventor | Device | Number | Issuance Date |
|---|---|---|---|
| Staude | Feed device for flexible box-making machines | 906,827 | December 15, 1908 |
| Frostad | Feed for disks or the like | 1,790,910 | February 3, 1931 |
| McAlpine | Machine for successively delivering stacked panels | 2,930,508 | March 29, 1960 |
| Hartel | Record card feed mechanism | 3,285,602 | November 15, 1966 |

———◆———

Although it has not been necessary for this Court to address itself to the issue of anticipation in this case, evidence relating to the patents cited above was useful in showing the state of the prior art before 1969 and the particular problems which Ward '095 and the Newark machine sought to solve. Frostad '910 is particularly pertinent here.

The Frostad patent discloses a device for feeding discs of paper or other materials. Such feed mechanism was designed to be used in connection with can-making or other types of machinery. Frostad '910 teaches the use of a perforated vacuum box to engage circular discs placed on a table surface and to progressively suck each work piece flat. A reciprocating feeder plate then pushes the work piece through a front gate bringing it into positive engagement with nip rollers, which in turn lead to the machinery to which the device is attached. Thus, the Frostad feeding system has a threshold member and gate means, a reciprocating feeder and a suction means consisting of a vacuum chamber below the table surface which operates through ports or perforations. Frostad '910 teaches the use of a vacuum box to engage the work piece and suck it flat so that the feeder plate may engage its trailing edge and push it through the gate into the nip rollers. Both the work piece and the feeder bar provide a type of valving action whereby there is a progressive exposure of a portion of the next succeeding work piece to the vacuum pressure.

The principal difference between Frostad '910 and the patent in suit is that the Frostad invention was designed to

operate on discs, and therefore the work pieces are round rather than rectangular as are the corrugated sheets fed into the Newark machine and the patented device. The specifications of the Frostad patent indicate that the discs to be fed into the device were relatively thick and stiff as compared with ordinary paper. However, it is specifically noted that the discs are frequently warped or wrinkled, and it is further stated that the invention, although described in connection with the feeding of paper discs used in can-making machines, is applicable to other machinery using other materials without departing from the scope of the invention.

### (c) Conclusion

Assuredly, in view of the teachings of the Newark machine and Frostad '910, the invention disclosed in Ward '095 would have been reasonably obvious to one possessing ordinary skill in the art.[10] To convert the Frostad device into the machine disclosed by the Ward patent, one would merely have to adapt Frostad so as to permit the feeding of rectangular paperboard sheets rather than stiff paper discs. To accommodate larger sheets, a larger vacuum system could be employed.

Indeed, the only difference between the Newark machine and the patent in suit is that the latter has a larger vacuum box and, in addition, has a supplementary adjustable vacuum box to be used for larger sheets.[11] In the Newark machine, the vacuum box was only some ten inches wide, measuring from the front gate. On sheets measuring less than twenty inches, the vacuum would operate on both the leading and the trailing edges of the bottommost sheet in the same manner as would the vacuum of the patent in suit. As larger

sheets were fed, differences between the Newark machine and the patent in suit become more pronounced. The effect on the leading edge of sheets larger than twenty inches would be the same. However, the vacuum of the Newark machine would have only a slight effect in sucking down the trailing edge of a sheet measuring twenty inches or more, and the vacuum would not suck the trailing edge down flat as does the patented machine. The contribution of the inventors then was merely to enlarge the vacuum box so that the sucking action would operate on both the trailing and the leading edge of larger sheets. Such a response to the problem created by the use of larger sheets in the feeding system would have been obvious to one skilled in the art, in view of both the Newark machine and the Frostad patent.

The Newark machine is particularly significant in this case because it was by no means an experimental or prototype device which might have been overlooked by the patentees. The plaintiff has sold more than 100 of these machines since they were first developed in the mid–1960's. Not only was the Newark machine commercially successful when it was first offered for sale, but also many of these machines are still in operation today.[12] The Newark machine is capable of being converted with minimum difficulty for use with larger sheets. One need merely increase the size of the vacuum box and increase the capacity of the blower system which creates the vacuum pressure.

Plaintiff contends that the combination of old elements in the patent in suit does have a synergistic result because there is an aerodynamic effect which is created by the particular arrangement here and which was not present in the prior art. The evidence in this case does

---

10. Neither the Newark machine nor Frostad '910 was cited by the patent examiner. As these structures were particularly pertinent, the statutory presumption of the validity of the patent in suit has been weakened or destroyed. *Heyl & Patterson, Inc. v. McDowell Co.,* 317 F.2d 719, 722 (4th Cir. 1963).

11. The evidence in this case indicates that the boxmaking industry uses sheets ranging in width from 16 inches to 66 inches.

12. For example, a Newark machine was sold by plaintiff to Independent Boxmakers, Inc. in 1967 and was still being used in 1975 at that company's plant in Louisville, Kentucky.

not support such an argument. In the Newark machine as in the patent in suit, the departing sheet and the feeder bar act as sliding valves, concentrating the flow of air and increasing the sucking action of the vacuum on the next sheet in the stack. The work piece and the feeder bar in both devices thus together furnish the valving action which permits the progressive exposure of portions of the next succeeding sheet to the vacuum pressure. Any difference in result is caused by the size of the vacuum box in the Newark machine as compared with that in the patented device.

A mechanical patent which is a mere combination of old elements is much more susceptible to attack on the ground of obviousness than is some other type of patent. Particularly in chemistry or electronics, old elements which have been brought together quite readily take on some new quality or function, but as the Supreme Court observed in the *Great A&P Tea Co.* case, *supra* 340 U.S. at 152, 71 S.Ct. at 130, "this is not a usual result of uniting elements old in mechanics." The evidence here does not disclose that any synergistic result was obtained by merely increasing the size of the vacuum box used as a part of the feed table.

■ Moreover, the enlargement of the vacuum box shown in the Newark machine to the size shown in the patent in suit represented a mere change in size, proportion or degree of an element contained in the prior art. Such an improvement, no matter how desirable or useful, does not constitute a patentable invention. *See Belding Mfg. Co. v. Challenge Corn Planter Co.,* 152 U.S. 100, 106–107, 14 S.Ct. 492, 38 L.Ed. 370 (1894); *Aghnides v. F. W. Woolworth Company,* 335 F.Supp. 370, 381 (D.Md.

1971). In its recent decision in *Blohm & Voss A G v. Prudential-Grace Lines, Inc.,* 489 F.2d 231, 247 (4th Cir. 1973), the Fourth Circuit emphasized that mere mechanical improvement over the prior art does not necessarily rise to the dignity of invention.

Much of the extensive proof offered by the plaintiff at the trial related to plaintiff's contention that the patent in suit met a long felt but unsolved need and that it enjoyed a considerable commercial success. However, these are no more than secondary considerations and although relevant and persuasive in a close case, they cannot save a patent which otherwise lacks invention. *Anderson's-Black Rock, Inc. v. Pavement Salvage Co., Inc., supra,* 396 U.S. at 61, 90 S.Ct. 305; *Great A&P Tea Co. v. Supermarket Equipment Corp., supra,* at 153; *National Steel Corporation v. Baltimore & Ohio Railroad, supra,* at 942. This principle was reaffirmed in the very recent case of *Deering Milliken Research Corporation v. Beaunit Corporation,* (4th Cir. February 12, 1976), in which the Fourth Circuit reversed a finding of the District Court that a textile patent was nonobvious.[13] Where, as here, the evidence shows conclusively that the invention was obvious when viewed in the light of the relevant prior art, secondary considerations are not controlling.

### Findings

This Court finds as facts and rules as a matter of law that Claims 1 through 4 inclusive, 6, 7, 14 and 15 of United States Patent No. 3,588,095 are invalid because of obviousness. This Court's findings of fact and conclusions of law under Rule 52(a) of the Federal Rules of Civil Procedure are embodied in the foregoing Opinion, whether or not expressly so characterized.

**13.** That opinion was written by Mr. Justice Clark, sitting by designation with the United States Court of Appeals for the Fourth Circuit.

Mr. Justice Clark was the author of both *Graham v. John Deere Co., supra,* and *United States v. Adams, supra.*